Breckinridge and wife v. Denny & Faulkner.

CASE 19—PETITION EQUITY—JANUARY 22.

8bu523
103  258

8bu523
f131  620

# Breckinridge and wife v. Denny & Faulkner.

### APPEAL FROM GARRARD CIRCUIT COURT.

1. ESTATES-TAIL ARE CONVERTED INTO FEE-SIMPLE BY STATUTE.—In 1838 F. devised his estate to trustees "*and their successors forever,*" in trust for the use of his three daughters "*and their posterity forever;*" and if either should die without lawful issue, her part to go in trust to the survivors, to be held in the same way. He expressed a hope that his wishes as to the manner in which the estate devised should be held and managed would be "*obeyed in all time to come.*" *Held,* this devise created estates-tail, which under the act of 1796 of the legislature of this state were converted into estates in fee-simple.

2. Where from the language used an estate appears to have been devised contrary to law, if the law allows of any other construction not involving the necessity of distorting or straining the obvious meaning of the expressions used by the writer, the courts will be inclined to adopt it as the correct one.

3. The word "*posterity*" embraces not only children, but descendants to the remotest generation.

4. Section 10 of the act of 1796 does more than declare the modern common law upon the subject of entailments. It not only provides that estates-tail shall not be created, but declares that every estate in lands which thereafter might be limited "so that, as the law aforetime was, such estate would have been an estate in tail, shall also be deemed to have been and continue an estate in fee-simple."

5. When an estate-tail is converted under the statute into an estate in fee-simple it becomes a pure and absolute fee-simple, and not a defeasible fee or executory devise. (Carter v. Tyler, 1 Call, Virginia, 182.)

WM. CHENAULT, . .
DURHAM & JACOBS,
J. S. VANWINKLE, .
OWSLEY & BURDETT,
} . . . . . . . For Appellants,

CITED

Act of 1796, sec. 13, Morehead & Brown's Digest, 443.
Bingham on Descents, 152, 228, 229, 192.
Revised Statutes, 2 Stanton, 123, 229, 230.

Breckinridge and wife v. Denny & Faulkner.

Ms. Opinion, September 17, 1867, Best v. Cochran.
Powell on Devises, 279.    1 Dana, 235.
16 B. Monroe, 637.         5 Littell, 312.  .
12 B. Monroe, 658, Moore v. Moore.
14 B. Monroe, 662, Daniel v. Thompson.
14 B. Monroe, 322, McRay v. Merrifield.
12 Wheaton, 153, Jackson v. Chase.
14 B. Monroe, 344, Armstrong v. Armstrong.
16 B. Monroe, 312, Carr and wife v. Estill.
14 B. Monroe, 450, Turman v. White's heirs.
3 Metcalfe, 584, Nunnelly v. White.
2 Redfield on Wills, 654, 655, 658.
1 Greenleaf on Evidence, section 24.
2 Smith's Leading Cases, 625.
4 Monroe, 204, Moore's trustee v. Howe's heirs.
3 B. Monroe, 487, Hart v. Thompson's adm'r.
7 B. Monroe, 614, Attorney-General v. Wallace's devisees.
2 Williams on Executors, page 933.
8 B. Monroe, 616, Deboe v. Lowen.
3 Burrows, 1634–5, Chapman v. Brown.
3 Vesey, jr., 336, Bristow v. Waide.
2 Brown's Chancery Cases, 55, Pitts v. Jackson.
1 Simons, 173, Burgough v. Edridge.

GEORGE R. McKEE,   }
GEORGE W. DUNLAP,  }   . . . . . . . . For Appellees,

CITED

Act of 1796, sec. 10, 1 Morehead & Brown's Digest, 442.
Smith on Executory Interests, sections 536, 709.
14 B. Monroe, 144, Brown v. Alden.
11 B. Monroe, 33, Lackland v. Downing.
11 B. Monroe, 58, Prescott v. Prescott.
2 Metcalfe, 334, Johnson v. Johnson.
2 Duvall, 547, True v. Nichols.
4 Monroe, 201, Moore's trustee v. Howe's heirs.
4 Russell, 403, Palmer v. Helford.
2 Haywood, 130, Jeffries v. Hunt.
2 Sergeant & Rawle, 509, Graves v. Wiley.
4 Comyn's Digest, title "Estates by Devise."
2 Sergeant & Rawle, 470, Clarke v. Baker.
2 Redfield on Wills, section 73, paragraph 21, page 851.
3 Call, 363, Tate v. Tally.
3 Call, 343, Hill v. Burrows.

3 Randolph, 280, Goodrich v. Harding, &c.
1 Call, 165, Carter v. Tyler.
2 Munford, 263, Snyder v. Snyder.
4 Munford, 331, McCintoc v. Manus.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

John Faulkner died in the year 1838, having first made and published his last will and testament, which in due time was admitted to probate. This will, among others, contains the following provisions, viz.: " I will and bequeath my entire landed and personal estate, together with all my negroes and their future increase, equally to my three daughters, subject, however, to the provisions and conditions hereafter set out. For the purpose of the whole of my property of every description being equally and justly divided between my children, and that the same may be made perfectly safe and secure to them and their lawful issue forever, and with the additional desire that their education should be carefully attended to, a matter about which I feel great solicitude, I hereby appoint my friends, Oliver Terrill, James H. Letcher, and Robert P. Letcher, guardians and trustees, to hold for the use and benefit of my children and their lawful heirs forever the whole of the portion to which each is entitled under this will."

The testator then sets out specifically and minutely the manner in which he desires these guardians and trustees to discharge the trusts reposed in them, and continues: " In making these requisitions as to the mode in which I wish the trusts executed, I desire it clearly understood it is by no means to be inferred that it springs from any want of confidence in the integrity or fidelity of the gentlemen elected as guardians and trustees to my children; but it was suggested by one of the gentlemen chosen, and the only one with whom I have had an opportunity of consulting, that provision of the sort was desirable and proper in reference both to guardians and wards, more especially as I design the trusts to continue

in the persons appointed and their successors forever. My children are not at liberty to choose guardians at the age of fourteen. I have adopted that mode which I have deemed the most safe for the preservation of their estate by the appointment of guardians and trustees, and my wishes ·upon the subject I hope will be strictly obeyed in all time to come. Under no color, under no pretext, no device whatever, is my real estate to be sold by interposition of a chancellor or by an act of the legislature. My will is that the guardians and trustees and their successors shall hold the estate in trust for the use, support, education, and benefit of my children and their posterity forever. If one of them dies without lawful issue, then the property, or part to which she is entitled, is to go to ·the survivors, her two sisters, and to be held in trust in the same manner designated. If two should die without lawful issue, then the survivor is to have the whole of the estate, to be held under the same regulations and restrictions as have been already set forth and specified. Should either of my daughters, however, after she arrives at the age of twenty-one, desire to choose her own trustee, she is at liberty to do so, upon the party so chosen giving his consent, entered of record in the County Court of Garrard, to act as trustee; but when chosen he is to have no greater power than the one appointed under this will. He is to hold the estate in trust, and has no authority or power to sell in any way whatever."

By subsequent clauses the testator provides for filling the vacancies that may be caused by the failure or refusal of either of the guardians or trustees to act, or by their removal from the county of Garrard; also for the division of his lands and negroes; and then uses this language: "But after my property is divided in the manner I have directed, the trusteeship still continues, in the manner heretofore mentioned, in the trustees herein appointed and their successors forever."

A careful analysis of all the provisions of this will con-

strains us to conclude that it was the intention of the devisor, through the intervention of trustees, to secure his estate to his children and their descendants for all time to come. Inasmuch as such intention was contrary not only to the spirit but the letter of the law as it existed at the time the will was made and published, it should not be assumed, unless the language of the devisor leads naturally and legitimately to that conclusion. In fact, if the will allows any other construction, not involving the necessity of distorting or straining the obvious meaning of the expressions used by the writer, the courts will incline to adopt it as the correct one. The purpose of securing to the devisees "*and their lawful issue forever*" the estate devised, the expressed intention that the guardians and trustees should hold it "*for the use and benefit of my (his) children and their lawful heirs forever,*" and that after the property should be divided in the mode directed the trusteeships should still continue in the trustees appointed "*and their successors forever,*" are provisions which might not be held to be necessarily inconsistent with the idea that the testator intended that his children should take estates for life, or defeasible fees in the realty devised to them. Nor do we think it necessary to construe the dying "without lawful issue" as meaning an indefinite failure of issue. It is not necessary to resort to the canons of construction at all. The testator explains such language as would ordinarily admit of doubt by stating that he "*designs the trust to continue in the persons appointed and their successors forever,*" and that the guardians and trustees and their successors are to hold the estate in trust "for the use, support, education, and benefit of my (his) *children and their posterity forever.*" There is perhaps no broader or more comprehensive term in our language than that of "posterity." It embraces not only children, but descendants to the remotest generations; and as the trustees were to hold the estate for the support, education, and benefit

of the first takers *"and their posterity forever,"* it was but natural that the devisor should express the hope that his wishes as to the manner in which the estate devised should be held and managed would "be strictly obeyed *in all time to come.*" The fact that the will provided that in case one or more of the devisees should die without lawful issue, the survivors or survivor should take their interests, does not rebut the idea of an intended entailment, for the survivors or survivor was then to hold under the same regulations and restrictions as the original devisees.

There is an essential difference between this will and that of Ebenezer Best.* In the latter no attempt was made to limit the estate beyond the heirs or issue of the first takers. No intention of creating perpetuities was manifested; but upon the contrary, from the general tenor of the instrument, it clearly appears that such was not the testator's intention.

The restriction imposed upon the estates devised to Faulkner's children, confining the descent to their issue, was inhibited by the tenth section of the act of 1796, and such estate must, according to the plain letter of the law, be decreed and held estates in fee-simple.

This statute does more than merely declare in concise terms the modern common law upon the subject of entailments. It not only provides that estates-tail shall not be created, but declares that every estate in lands which thereafter might be limited, "so that, as the law aforetime was, such estate would have been an estate in tail, shall also be deemed to have been and continue an estate in fee-simple."

This language is so clear that the intention of the legislature can scarcely be mistaken. Counsel, however, insist that General Faulkner's children in no event could take greater interests in the property devised than fees defeasible upon their dying without issue living at the time of their respective

---

* Manuscript Opinion, September 17, 1867, Best v. Cochran.

deaths, and that the devises over to the survivor or survivors may therefore be upheld as executory devises. They claim that "the whole purpose of the legislature is accomplished when a conveyance or devise which before the enactment would have created an estate-tail is converted into a fee-simple or defeasible fee, and that it was not designed to uproot and destroy the various remainders and executory devises often introduced into wills, by which testators are enabled to mold their testamentary gifts so as to meet and provide for such contingencies as often arise in human life."

This view of the law was substantially determined to be erroneous by the Virginia Court of Appeals in construing the Virginia statute of 1776, from which our statute was taken, in the case of Carter v. Tyler, 1 Call, 182.

The testator, Champe, gave to his son William an estate in fee-tail in certain lands and slaves. To his son John an estate in fee-tail in certain other lands and slaves. He also provided that if either of his said sons should die without issue the entire estate should go to the survivor; if both should die without issue, then after his wife's death the lands were to be sold, and the moneys arising therefrom to be equally divided between his daughters then living.

William sold and conveyed the lands devised to him to one Hooe. Both sons died without lawful issue, leaving a sister, Sarah Carter, the heir at law of the one last dying. She claimed that John took the lands sold to Hooe under her father's will, he having survived her brother William, and that the title thereto passed to her as heir at law of John upon his death.

The court held that William was indisputably tenant in tail in the lands devised to him; that the Virginia statute of 1776 converted this estate into an absolute fee-simple; that a fee-simple estate "includes an entire dominion over the property to *sell*, to *give*, or *transmit* to heirs general; and when an

VOL. VIII.—35

instrument has disposed of that to one nothing remains to be given to others or to descend." The Virginia statute, from which our act of 1796 was taken, declares that the first taker in such cases "shall have the same power over the same estates as if they were pure and absolute fees." The Virginia court, in commenting upon this language, says that "the words *full and absolute* used by the legislature, the word *pure* by Lord Coke, and *pure and indefeasible inheritance* used by others, are epithets to distinguish them from bare and limited fees; unnecessarily indeed, as *fee-simple* alone would have the same effect."

The court concedes that a "devise in itself importing a fee - simple may admit of an executory devise afterward . . . by changing the supposed fee-simple into a contingent and limited fee from apparent intention;" but that neither the words nor spirit of the act admit of such an operation in the full and absolute estate which it vests in the first taker.

We have examined this decision with great care, and purposely set out at length the principles therein settled, because it is not only clear and satisfactory, but is the earliest case involving the construction of the Virginia statute of 1776 which we have been able to find reported. It was approved by the Virginia court in Hill v. Burrow, 3 Call, 297; Tate v. Talley, *ibid.* 307; and Bell v. Gillespie, 5 Randolph, 273; and we are satisfied that a careful examination will show that this court has not construed our statute differently.

In the case of Moore's trustee v. Howe's heirs it was held that the will did not create an estate-tail either in the testator's daughters or their issue, and hence the devise over was upheld.

In the case of Hart v. Thompson's adm'r (3 B. Monroe, 482) it was held that, according to the strictest rule of English interpretation, the devise did not constitute an estate-tail,

but was a limitation over upon a fee, and was therefore good as an executory devise, the court saying that there was a clear indication of an intention on the part of the devisor to pass a defeasible fee only to the first devisees. In such a case the statute of 1796 clearly did not apply.

In the case of Attorney-General v. Wallace (7 B. Monroe, 611) it was held that the devisor invested his daughter with a defeasible fee; but the doctrine was announced that if he had intended to provide that the devises over were still to take effect although his daughter should die leaving children, provided they should die without issue, then it was clear that the devise upon that contingency would be void. The opinion in this case, as well as that in the case of Armstrong v. Armstrong (14 B. Monroe, 333), seems to intimate that a devise over depending upon two alternative contingencies, one valid and the other too remote, although void so far as it depends upon the remote event, will be allowed to take effect on the alternative one. In each of these cases, however, there was held to be but one contingency, and that one valid. These intimations are therefore to be regarded as *dicta*.

In the case of Deboe v. Lowen (8 B. Mon. 616) the question was directly presented and adjudicated. The devisor gave to his son James, in conjunction with others of his children, in one general devise, certain estate, and if any one of them should die without lawful heir or heirs, the property willed to them to go to the survivors. This devise was held to vest each devisee with a defeasible fee. But it was further provided as to James that if he should die without issue his part was to go to the testator's unmarried daughters, and if he should die with heirs the testator willed it to them. The court held that, " taking the last clause, the devise may be considered as being to James and his heirs (of his body), if he has any at his death; if none, to his brothers and sisters, which is an

estate in tail, or to James (and his heirs forever); if he dies with heirs of his body, to them; and if he dies without heirs of his body, to his brothers and sisters. If the devise to the heirs (of his body) does not restrict the devise to James, he has a fee-simple, defeasible in favor of the remainder-men on his death without issue. . . . ' If his estate is restricted to an estate-tail by the devise to his heirs, confining the descent to his issue, then he has by the statute a fee-simple, and his alienation is good against the remainder-men as well as his issue."

This case has never been overruled. It accords with the intention and gives force to the language of the statute, and is in our opinion a correct exposition of that salutary enactment. As the devises to the children of General Faulkner are restricted to estates-tail by the devises to their issue, and by clearly and unmistakably confining the descent to such issue until it shall become extinct, we must, in obedience to the manifest intent of the legislature, hold that his children took under his will estates in fee-simple, "pure and absolute." Mrs. Breckinridge therefore had the legal right, in conjunction with her then husband, the late W. H. White, to sell and convey her estate to Denny, and her said conveyance passed to him an estate in fee in the lands conveyed.

The judgment of the circuit court quieting the title of the appellee, Faulkner, who purchased from Denny, and dismissing the cross-petitions of the remaining parties, must be affirmed.