CASE 61.—ACTION BY THE FIDELITY TRUST CO., EXECU-
TOR OF W. S. KASEY, AND OTHERS FOR CON-
STRUCTION OF THE WILL OF W. S. KASEY,
DECEASED.—January 27.

# Kasey v. Fidelity Trust Co., &c.

Appeal from Hardin Circuit Court.

JOHN ALLEN DEAN, Special Judge.

Judgment for plaintiffs, defendants appeal af-
firmed. Pending the appeal defendant died, and the
action was revived in the name of her executor.

1. Perpetuities—Suspension of Power of Alienation—"Die Leav-
ing No Lawful Issue Surviving Them."—By one clause of a
will property was devised in trust for testator's niece for life
and her children, after her death, should she have any. In
another clause the property was spoken of as devised to the
niece and her heirs, and it was provided that if the niece
should die leaving no children or lawful issue surviving her,
or if such child or children should die leaving no lawful issue
surviving them, the property should go to a trust company
to be held in trust for a Bible society. Held, that the words
"die leaving no lawful issue surviving them" did not import
an indefinite failure of issue, but referred to the child's or
children's death before the termination of the life estate,
and the Bible society's trust was to arise upon the niece's
dying without leaving a child or grandchild, and hence did
not suspend the power of alienation for longer than a life
or lives in being at the creation of the estate, forbidden by
the common-law rule against perpetuities, and Ky. Stats.
1903, section 2360, declaratory thereof.
2. Charities—Validity—Certainty.—A charitable trust in a will,
providing that property should be held by a specified trust
company as an endowment fund for a specified Bible society
with a specified address which was an incorporated charity
engaged in distributing Bibles to the poor, the interest on
the endowment, after paying the expenses of managing the
vol. 131—20

fund, to be paid to the society annually or semiannually as it should become due, and to be used not in paying pre-existing debts of the society, but in distributing the Bibles to the destitute of the earth, was sufficiently certain and definite.

3. Same—Certainty as to Beneficiaries.—As it is necessarily uncertain and indeterminate who the ultimate beneficiaries of a charitable trust are to be, they cannot be named or located in advance, and, if the class of beneficiaries be named in general language or outline leaving to the trustee the discretion to select the immediate objects of the class named to be the actual beneficiaries, the trust is sufficiently certain.

4. Perpetuities—Accumulations During Life.—That a trust to one person for life and to her children at her death, and if she left no children or grandchildren then to a charity, provided for accumulation of interest on the fund during the life of the first taker, did not render it violative of the rule against perpetuities.

5. Same—Gift to Charities.—The fact that a trust limited over to a charity, if it should come into the hands of the charity, would be perpetual, would not render it violative of the rule against perpetuities; the rule having no application to charities after their right of enjoyment begins.

6. Same—Creation of Future Estates—Reversions.—The · rule against perpetuities, and Ky. Stats. 1903 section 2360, declaratory thereof, have no application to reversions, and hence the fact that it was provided· that if a trust limited over to a charity, and which would be perpetual if the charity received it, shall fail, the property should revert to the donor's heirs, did not invalidate the trust.

S. M. PAYTON for appellant.

HAZELRIGG, CHENAULT & HAZELRIGG, CHARLES CARROLL and LAYMAN & HOLBERT of counsel.

POINTS OF LAW DISCUSSED IN THE BRIEF.

1. If a testator dispose of his property under a will in contingent life uses and other successions extending over a long period of time with reversion to his legal heirs so that the ulterior gifts may be considered invalid for remoteness, the validity of such ulterior gifts, and all possibilities that may or may not arise under the will, are so adjudged and determined from the date of the death of the testator and the circumstances

and conditions then prevailing and no other time or circumstances can be considered or looked to; and no events that may have happened after the death of the testator can be considered to determine what were the possibilities under the will at the date of the death of the testator and the conditions then prevailing. (Ky. Stats., sec. 4839; Howell v. Ackerman, 89 Ky. 22; Alexander v. Waller, 6 Bush 330; Flurnoy v. Flurnoy, 1 Bush 515; Graves v. Spur, 97 Ky. 651; Miller v. Melone, 22 Ky. Law Rep. 635; Scheffer v. Vaught's Trustee, 23 Ky. Law Rep. 2291; Jarman on Wills, vol. 1, star, pp. 242, 243, 5th ed.; Jee v. Audley, same volume, author and pages; Gray on Perpetuities, sec. 231 and cases cited; Brown v. Columbia Finance & Trust Co., 30 Ky. Law Rep. 110.)

2. An indefinite failure of issue signifies a general failure of issue, whenever it may happen, without fixing any time, or certain or definite period, within which it must happen; and any contingent gift made to take effect on an indefinite failure of issue, void "If my niece shall die leaving no child or children or lawful issue surviving her, or if such child or children shall die leaving no lawful issue surviving them," expresses indefinite failure of issue, and all ulterior contingent gifts based upon it are void for remoteness, because it would let in children and grandchildren and their issue, all born after the death of the testator. (Bouvier's Law Dictionary; 1. Har. & G., 111 Md.; James v. Rowland, 52 Md.; Powell v. Bradon, 24 Miss. 343; Chism v. Williams, 29 Mo. 288; Bell v. Scammon, 1 N. H. 381; Paterson v. Ellis, 11 Wend. 259; Middleswrath v. Black, 74 Pa. 414; Henry v. Elder, 2 McCord, S. C. 323; Chester v. Green, 24 Tenn. 26; Albee v. Carpenter, 66 Mass. 382; Van Vechten v. Pearson, 5 Pai, N. Y., 512; McComb v. Miller, 9 Pai, 266 N. Y.; Barden v. Burns, 6 Ala. 362; Morehouse v. Cotteal, 22 N. J. 430; Davis v. Steele, 38 N. J. 168; Hockney v. Tracy, 137 Pa. 53; Hamner v. Hamner, 40 Tenn. 398; Conklin v. Conklin, 3 Sandf., 65 N. Y.; Cook v. Bucklin, 18 N. J. 666, and Brown v. Columbia Finance & Trust Co., 30 Ky. Law Rep. 110.)

3. If a testator dispose of his property under such a plan and scheme as that only a portion of it can be given effect without carrying out his general intentions and effectuating his chief aims and objects and so that certain portions of his will can not be executed unless other and more important portions of it can also be executed, then no portion of the will is to be held valid, and the whole structure is to be disregarded and fall together. (Manice v. Manice, 43 N. Y. 303; Knox v. Jones, 47 N. Y. 389; Van Schuyver v. Mulford, 59 N. Y. 426; Benedict v. Webb, 98 N. Y. 460; Kennedy v. Hoy, 105 N. Y. 135; Lawrence

v. Smith, 163 Ill. 149; Green v. Tilden, 130 N. Y., and Fidelity v. Lloyd, 25 Ky. Law Rep. 1827.)

4. For the purposes of construction the whole will is to be regarded and treated as a unit. (Daniel v. Thompson, 14 B. M.; Augustus v. Seabolt 1 Met. 159; Moran v. Dilhey, 8 Bush 473; Comie v. L. O. H. S., 3 Bush 379; Bayless v. Bayless, 79 Ky. 252; Guthrie v. Turner, 14 Ky. Law Rep. 336; Bedford v. Bedford, 99 Ky. 273.)

5. The general scheme and plan of the testator is to be given effect and enforced. (Green v. Tilden, 130 N. Y. 29, and cases therein cited.)

6. The void portions of the will are to be regarded as valid for all purposes of construction, and the will is to be regarded and treated as a unit. (Burrill v. Boardman, 42 N. Y. 254; Van Nostrand v. Moore, 52 N. Y. 12; Kiah v. Grenier, 56 N. Y. 220; Green v. Tilden, 130 N. Y. 29, and Re Tompkins, 154 N. Y.)

7. "The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of a life or lives in being at the creation of the estate and twenty-one years and ten months therafter," and all future and contingent interests, including charities, if they be preceded or followed by a gift to an individual, are within the inhibition of the statute, section 2360, as well as the trust in which such property is reposed. (Gray on Perpetuities, secs. 296-7; and as to charities, being under the rule, p. 362, Am. & Eng. Ency. of Law, vol. 18, and Gray on Perpetuities, 592, and authorities cited under both authors. That the trust has the same limitation on its existence as the property has that is in the trust, see: Perry in Trusts, sec. 377, and Chaplin Restraining on Alienation, sec. 64 and sec. 66.)

8. The term absolute power of alienation is equivalent to the power of conveying an absolute fee, and the test is, in any case, if there are persons in being competent to convey on behalf of each estate, interest, right and possibility, present and future, vested and contingent, then the power is not suspended, and the converse of the proposition is equally true. (Sec. 64, Chaplin on Restraints Against Alienation; Fidelity v. Lloyd, 25 Ky. Law Rep. 1827.)

L. A. FAUREST for Fidelity Trust Co., SPAULDING & STITES for American Bible Society.

QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. A person cannot take under a will and also contest the

Kasey v. Fidelity Trust Co., &c.

probate of that instrument. (Gore v. Stephens, 1 Dana 201; White v. Mayhall, 15 Ky. Law Rep. 830; Utermehle v. Norment, 197 U. S. 57.)

2. Election—Miss Kasey can not ask that her election be revoked on the ground that it was made by mistake or induced by a fraud, because; first, there is not sufficient allegation of such mistake or fraud. (Stephens on Pleadings, 333; Newman on Pleading and Practice, sec. 558; 14 Enc. of Pleading and Practice, 42, 43; Fletcher on Equity Pleading and Practice, 130, 131, 132; 9 Enc. of Pleading and Practice, 686, 687.)

Second, she did not return or offer to return the benefits received under the will even in the case of a contract obtained by gross fraud, any benefits under it must be tendered back before a suit may be maintained. (Bain v. Wilson, 1 J. J. Mar. 203; Willett v. Forman, 3 J. J. Mar. 293; Hoggins c. Beraft, 1 Dana 30; L. & N. R. R. Co. v. McElroy, 100 Ky. 153; Home Benefit Society v. Muehl, 22 Ky. Law Rep. 1378; 5 Lawson on Rights, Remedies and Practice, secs. 2360, 2363.)

3. The same principle applies in will contests. (Stone v. Cook, 64 L. R. A. 288; 11 Rm. & Eng. Enc. of Law (2nd Ed.) 98; Page on Wills, sec. 727; Adams v. Adams, 39 Ala. 278; Steele v. Steele, 64 Ala. 461; In re Soule, 1 Connoly, 54, 3 N. Y. Supp. 259; In re Peaslee, 73 Hun 14; Watson v. Watson, 128 Mass. 152; Hamblett v. Hamblett, 6 N. H. 337; Holt v. Rice, 54 N. H. 398; Millers' Appeal, 159 Pa. St. 574; Bell v. Armstrong, 1 Addams 138; Braham v. Burchiel, 2 Addams 514.)

4. There are some cases allowing a widow to retain a benefit under a will and yet renounce same, but this is based on the statutory right of a widow as to time or election and dower rights. . (Tomlin v. Jayne, 14 B. Mon. 130; Hicks v. Smith, 12 Ky. Law Rep. 976; White v. Mayhall, 15 Ky. Law Rep. 830; L. & N. R. R. Co. v. Stephens, 96 Ky. 403.)

5. The executor has so acted upon the faith of Emma Kasey's election that it cannot be put in statuo quo and will suffer if the will is rejected and therefore her election can not be revoked. (Stone v. Cooke, 64 L. R. A. 289; 11 Am. & Eng. Enc. of Law (2nd Ed.) 98; Page on Wills, sec. 727; Watson v. Watson, 128 Mass. 152; Uttermehle v. Norment, 197 U. S. 50.)

6. Emma F. Kasey continued in possession of the real estate devised her for life, and accepted a monthly payment of $100.00 under the will, after she had filed her appeal in the circuit court and with full knowledge of her rights. This constitute an irrevocable election. (White v. Mayhall, 15 Ky. Law Rep. 830; Gore v. Stephens, 1 Dana 201; Tomlin v. Jayne, 14 B. Mon. 130; Pomeroy's Equity Jurisprudence, sec. 512; Page on Wills,

Kasey v. Fidelity Trust Co., &c.

sec. 727; 11 Am. & Eng Enc. of Law, 98; Adams v. Adams, 39 Ala. 278; Stone v. Cook, 64 L. R. A. 291; Underhill on Wills, 1023; Madison v. Larmon, 48 N. E. 561; Bigelow on Estoppel (4th Ed.) 642.;

7. Question discussed and authorities cited in the construction of the will in the settlement suit:

(a) The bequest to the Fidelity Trust Company as trustee of the American Bible Society is a charity and a trust for charitable purposes will not ordinarily be treated as a perpetuity. (Gass v. Wilhite, 2 Dana 170; Moore v. Moore, 4 Dana 354; Crawford's Heirs v. Thomas, 21 Ky. Law Rep. 1101; Pullin v. Board, &c., Ch., 78 S. W. 457; Philadelphia v. Girard's Heirs, 84 Am. Dec. 470; Ky. Stats., sec. 317; Gray on Perpetuities, secs. 232, 603, 605; 6 Cyc., 905.)

(b) The devise over the American Bible Society is upon condition that Emma F. Kasey should have no children or issue or any child living at her death. Such a limitation is not too remote. (Ky. Stats., 2344; Harvey v. Bell, 118 Ky. 512; Attorney General v Wallace, 7 B. Hon. 611; Simpson v. Adams, 106 S. W. 820; Armstrong v. Armstrong, 14 B. Mon. 269; Grey on Perpetuities, sec. 633.)

(c) A limitation over on alternative contingencies, one of which is within the period prescribed by the rule against perpetuities. and the other too remote, will be allowed to vest on the happening of the former event. Emma F. Kasey having died leaving no children and the contingency having happened, the limitation over is good and takes effect. (Armstrong v. Armstrong, 14 B. Mon. 269; Attorney General v. Wallace, 7 B. Mon. 611; 22 Am. & Eng. Enc. of Law, 707 and 723; 6 Lawson on Rights, Remedies and Practice, sec. 2148; Gray v. Whittemore, 192 Mass. 367; Gray Rule against Perpetuities, sec. 341, et seq.; Stone v. Bradlee, 183 Mass. 165, 66 N. E. 708; Seaver v. Fitzgerald, 141 Mass. 401, 6 N. E. 73; Jackson v. Phillips, 14 Allen 539, 572; 1 Jarman on Wills (6th Ed.) side page 255 et seq.)

8. The attempt to provide to whom the property shall go if the American Bible Society should fail, become bankrupt or cease to work does not effect the gift to that society for two reasons:

(a) This provision does not create a contingent remainder, but a reversion, the right to which vests in the testator's heirs at its death. (Grey on Perpetuities, sec. 205; hopkins v. Grimshaw, 1u. U. S. 355; In re Randall L. R. 38 Ch. Div. 213; First Universalist Society of North Adams v. Boland (Mass.) 15 L. R. A. 223; astbrook v. Tillinghast, 5 Gray 17; Stone v. Framingham, 119 Mass. 303; Keith v. Scales, 32 S. W. 809.

(b) If the clause or reverter to his heirs were invalid as

attempting to limit an estate to vest at too remote a period, it would not effect the prior gift to the American Bible Society. (Grey on Perpetuities, sec. 247; 22nd Am. & Eng. Enc. of Law, (2nd Ed.) 723; Graham v. Whitridge (Md.) 66 L. R. A. 415; First Congregational Society v. Boland, 15 L. R. A. 233; Gray v. Whittemore, 192 Mass. 367, 10 L. R. A. (N. S.) 1148; Brattle Creek Ch. v. Grant, 63 Am. Dec. 723; Johnson v. Johnson, 79 S. W. 293; Burmley v. Brumley, 89 S. W. 182; Fidelity Trust Company v. Lloyd, 78 S. W. 896; Stevens v. Stevens, 21 Ky. Law Rep. 1315; Green v. Tilden, 130 N. Y. 29, 14 L. R. A. 33; Van Schuyver v. Mulford, 59 N. Y. 426.)

9. The will put no unlawful restraint upon the alienation of the property. (Pullins v. Board, 78 S. W. 457; Ky. Stats sec. 317; Coleman v. Leary, 70 S. W. 1068; Spalding v. Industrial School, 21 Ky. Law Rep. 1107; Thompson v. Brown, 75 S. W. 210; Crawford's Heirs v. Thomas, 21 Ky. Law Rep. 1101; Gass v. Wilhite, 2 Dana 170; Stallcup v. Cronley, 117 Ky. 547.)

10. The period of accumulation was only during the life time of Emma F. Kasey and is within the bounds set by the law. (22nd Am. & Eng. Enc. of Law (2nd Ed.) 730; Ray v. Sweeney, 14 Bush 1; Stevens v. Stevens, 21 Ky. Law Rep. 1315.)

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

This action was instituted in the Hardin circuit court by the executor, Fidelity Trust Company, to obtain a judicial construction as to the validity of a trust established in the will of W. S. Kasey, deceased. The trust in question is established in items 9 and 11 of the will, and they are as follows:

"Item Ninth. All of the rest and residue of my estate including United States and city of Louisville and other bonds I bequeath and devise to the Fidelity Trust and Safety Vault Company of Louisville, Kentucky, in trust for my niece, Emma F. Kasey, for life and her children after her death should she have any. The said trustee shall pay all the taxes and repairs on the real and personal estate not including the farm devised to Robert Kasey during the lifetime of

the life tenant and shall out of the income from the estate pay to the said Emma F. Kasey one hundred dollars ($100.00) per month for the support of her self and children should she have any, and also the support of her mother Mary E. Raitt and should the said Emma F. Kasey die before her mother my executor above named is directed to pay Mary E. Raitt fifty dollars ($50.00) per month from the death of Emma F. Kasey until her death, and the said Emma F. Kasey shall have the right to use and occupy as a home for herself and family the house and lot and cottage in Cloverport, Kentucky, purchased by myself and brother A. M. Kasey of Owen Raitt and wife, subject to their life estate during their lives.''

''Item Eleventh. If my said niece Emma F. Kasey should die leaving no children or lawful issue surviving her, or if such child or children should die leaving no lawful issue surviving them, then in such event I bequeath and devise all of the above estate devised in trust to the Fidelity Trust and Safety Vault Company, Louisville, Kentucky, for the said Emma F. Kasey and her heirs to the Fidelity Trust and Safety Vault Company, Louisville, Kentucky, my executors, to be held by them as an endowment fund for the American Bible Society, Astor Place, New York, the interest accruing on said endowment after the annual expenses and managing and attending to said fund by my executor have been paid at once to pay to the said Bible society semiannually or annually as it may become due. Said interest to be used by the said Bible society not in paying the debts of said society made heretofore, but in distributing the Bible or Word of God to the destitute of the earth, and in case said Bible society should fail or become bankrupt or cease to work, then in such a case all of the

above endowment shall revert back to my legal heirs.''

Pending the litigation, Emma F. Kasey, the niece and only heir at law of S. W. Kasey, died, intestate, leaving no children or grandchildren, and the action was by consent revived in the name of the executor of her will. On the part of Emma F. Kasey's executor, it is insisted: First, that the trust in controversy is void because the devise by which it is established violates the rule prohibiting perpetuities; and, second, that even if this be not sound, it is too vague, uncertain, and indeterminate for practical enforcement, and is therefore void. There are some other questions made upon the record, but, as we understand it, the adjudication of these will settle all the material parts of the controversy.

We will first examine the questions as to whether or not the devise provided for in item 11 is void because in contravention of the rule against perpetuities. The language of the will involved in the solution of this question is as follows: ''If my said niece Emma F. Kasey should die leaving no children or lawful issue surviving her, or if such child or children should die leaving no lawful issue surviving them, then in such event I bequeath and devise all of the above estate * * * to the Fidelity Trust and Safety Vault Company * * * to be held by them as an endowment fund for the American Bible Society. * * *''
Upon the part of the executor of Emma F. Kasey, it is insisted that the words, ''or if such child or children should die leaving no lawful issue surviving them,'' import an indefinite failure of issue, and that under the provisions of the will we are discussing it was intended that the trust should be established whenever any child or children or grandchildren,

whom Emma Kasey might leave at her death, should die without issue. If this construction be correct, undoubtedly the position of appellant is sound that the trust is void because inhibited by the rule forbidding perpetuities. Section 2360, Ky. St., which is declaratory of the common-law rule on the subject, is as follows: "The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter." Now, if the testator intended by the language used that, if Emma F. Kasey left a child or grandchild alive when she died, and thereafter if such child or grandchild should die without issue, then the trust should take effect, this would clearly be in the teeth of the statute above quoted, because the trust in the event supposed would take effect after an indefinite failure of issue and beyond a life or lives in being and 21 years and 10 months; but, on the other hand, the executor of the will of S. W. Kasey and counsel for American Bible Society contend that the language of the will under consideration, when taken as a whole, intended the trust for the benefit of the American Bible Society to take effect at the death of Emma F. Kasey, provided that she left no child or grandchild alive at her death, and, manifestly, if this contention be sound, the establishment of the trust under consideration is not violative of the statute above quoted. While the question thus raised, if viewed entirely as one of first impression, cannot be said to be entirely free from doubt, yet we think that our court, in former adjudications, has settled it so firmly as to be beyond successful assault.

In the case of Attorney General v. Wallace's De-

visees, 7 B. Mon. 611, one of the questions adjudicated
was identical with that at bar. In that case the lan-
guage of the testator upon which the question material
for our purpose turns was as follows: "But in the
event of the death of my above-named daughter,
Amelia Sarah Wallace, without child or children, or
should she not have any child alive at her death, or
should her child or children die without issue, in
either event, I do will and bequeath all, or the whole
of my estate," etc. In construing these words the
court in its opinion said that "the dying without
issue" meant the death of the children during the
lifetime of the life tenant. It is true that in this case
the court discussed another construction of the lan-
guage of the testator and said that, if it was mistaken
in the first construction, still the limitation over
could be upheld under a principle of law which we
need not follow; it being sufficient for our purposes
to adopt the first construction. In the case of Arm-
strong v. Armstrong, 14 B. Mon. 333, the question
we have here also arose. By the twelfth item of the
testator's will it was provided, among other things:
"It is my express desire, and so I will it, that the
real estate in the foregoing bequeathments be held
sacred for the support and comfort of those to whom
it is given, during their natural life, and that the same
descend to their children at their demise; but in the
event of any of said children departing this life
without issue, or such issue dying themselves, then
that portion so willed to each person, thus departing
this life, shall descend," etc. It became necessary
for the court to construe the words concerning the
death of the children or their issue, in order to dis-
pose of the argument there made, that the limitation
over was contrary to the rule against perpetuities,

and in the opinion it was said in answer to this sug-
gestion: "What was the contingency upon which this
limitation was to have its commencement? It was the
death of one of the children without issue, or such
issue dying themselves. The words 'dying without
issue' are now construed as importing a failure of
issue at the time of the death of the first devisee, and
not an indefinite failure." In the opinion in this
case, as in the former, the court discussed another
construction of the words, under which, assuming
that the first was incorrect, the limitation over might
be upheld. But in the case of Breckinridge v. Denny.
8 Bush, 523, in discussing the two cases above cited,
this court, speaking through Judge Lindsay, said that
in each of them the court rested its opinion upon the
construction we have followed, i. e., that the words
"dying without issue" were to be construed to mean
dying within the lifetime of the first taker under the
devise. In the case of Harvey v. Bell, 118 Ky. 512,
81 S. W. 671, 26 Ky. Law Rep. 381, the language was:
"Should either of my said grandchildren, Lilla Kate
Harvey, Sibble May Harvey, or Frank Wayne Har-
vey, die without issue of his or her body living, I
devise the property herein devised to the one so
dying to be equally divided between the remaining
ones or their issue." In the opinion, the court, speak-
ing through Judge Hobson, undertook to reconcile
a seeming conflict among the former decisions of the
court, and thus stated the rule upon the question
which we have here: "Where an estate is devised to
one for life, with remainder to another, and if the
remainderman die without children or issue then to
a third person, the rule is that the words 'dying
without children or issue' are restricted to the death
of the remainderman before the termination of the

particular estate.'' The conclusion we have reached is confirmed by the fact that in the ninth clause the testator devises the property to be held in trust for his niece, Emma F. Kasey, for life, and her children, after her death, should she have any, and in the eleventh clause he speaks of the property as devised to Emma F. Kasey and her heirs, thus showing he evidently meant the same thing by each of the three expressions he used in regard to the same trust. We therefore conclude that, by the language used in his will, S. W. Kasey intended the trust for the benefit of the American Bible Society to depend alone upon Emma F. Kasey dying without leaving a child or grandchild; and, this being true, the trust is valid so far as the rule against perpetuities is concerned.

The second contention of the appellant, that the trust for the benefit of the American Bible Society is too vague and indefinite for enforcement, is equally untenable as is the first. The charitable trust provided in item 11 is as follows: ''To be held by them (Fidelity Trust & Safety Vault Company) as an endowment fund for the American Bible Society, Astor Place, New York, the interest accruing on said endowment after the annual expenses and managing and attending to said fund by my executor have been paid at once to pay to the said Bible society semiannually or annually as it may become due. Said interest to be used by the said Bible society not in paying the debts of said society made heretofore, but in distributing the Bible or Word of God to the destitute of the earth.'' It seems to us that the trust in question is established with as much certainty and definiteness as charitable trusts usually are. The American Bible Society is an incorporated charity, engaged in the business of distributing Bibles to the poor and

needy throughout the world. The testator showed his knowledge of his beneficiary by giving its particular post-office address in his will, and he then provides that his trustee, the Fidelity Trust & Safety Vault Company, shall hold and manage his estate and pay over the net proceeds thereof annually, or semi-annually, as the case may be, to the American Bible Society for the purpose of supplying Bibles to the destitute of the earth. Who the ultimate beneficiaries of a charitable trust are to be is necessarily uncertain and indeterminate. They cannot be named or located in advance, and therefore the rule has been established that such trusts are sufficiently certain and determinate if the class of the beneficiaries be named in general language or general outline, leaving to the trustee the discretion to select the immediate objects of the class named to be the actual beneficiaries of the bounty of the settlor of the trust,

The case of Leak's Heirs v. Leak's Ex'r, 78 S. W. 471, 25 Ky. Law Rep. 1703 (second appeal of that case), involved a charitable trust of much more uncertainty and indefiniteness than the one in hand. There the trust, which was assailed, was as follows: "Second, I authorize and empower my executor hereinafter named to sell and dispose of my estate, real and personal, * * * for the following purposes in the order enumerated, and in such proportions and manner as they may be deemed wise and best by my executor: (1) For the aid of a Bible training and missionary school for Christian workers. (2) For the support of a missionary or missionaries in the foreign field. (3) To aid in carrying on the cause of Bible holiness, including fire baptized holiness work and evangelism. (4) To aid in the support of needy and destitute ministers of the gospel." But

it was upheld nevertheless. The court, in its opinion, speaking through Judge Burnam, said: "The general doctrine as to charitable bequests, as announced in a large number of adjudicated cases by this court, is that the beneficiaries may be designated as a class only, leaving the particular object of the testator's benefaction to be determined by the trustee appointed to administer it." In Thompson's Ex'r v. Brown, 116 Ky. 102, 75 S. W. 210, 62 L. R. A. 398, 105 Am. St. Rep. 194, the charitable bequest was vested in the testator's executor, to be "by him distributed to the poor in his discretion." This trust was upheld, as sufficiently definite and certain, in an opinion in which the various Kentucky decisions bearing upon the question are reviewed and discussed.

The trust established is not objectionable because of the time during which the interest on the fund is allowed to accumulate. The accumulating period is only during the life of Emma F. Kasey, and at her death the whole estate passed to her issue, if she had any, or in default of issue to the American Bible Society. The period of accumulation is not in contravention of the rule against perpetuities. Nor is the fact that the trust, if it should come into the hands of the Bible society, is thereafter perpetual, an objection to it. Charitable trusts are, as a rule, perpetual if they are successful, and the rule against perpetuities has no application to charities after the right of enjoyment begins. A charitable trust for the maintenance of a hospital for the poor, an asylum for the indigent insane, for the propagation of religion among the heathen, or the distribution of Bibles, is all the better in that it is perpetual. Nor does the fact the testator provided, if there should be a failure of the trust, that the property should revert to his

own heirs, militate against its validity. Neither the rule nor the statute against perpetuities has any application to reversions. In the case before us, the reversion would be the ending of what would otherwise be a perpetual trust, and the testator has only provided for a reversion which would have accrued to his heirs at law without any provision therefor on his part.

Judgment affirmed.