## Letcher's Trustee et al. v. Letcher.

May 31, 1946.

450

Henson & Taylor for appellee.

Opinion of the Court by Judge Latimer—Affirming.

Portions of two wills are involved in this litigation, one executed by Dr. James H. Letcher and the other by his son, Gibney Oscar Letcher. Dr. Letcher died December 6, 1932, and his will was admitted to probate the 26th of the same month. Item 2 of his will, the portion pertinent to this action, reads as follows:

"Item Second: I give and bequeath to my son, Gibney Oscar, so long as he lives, my river bottom farms, situated on the Ohio and Green Rivers in what is known as 'The Point,' fronting on the Ohio River about three (3) miles above the mouth of Green River and extending back to Green River. Should my son, Gibney Oscar, have children of his own issue, this property in the river bottoms is, at his death to become the property of his heirs; and if he dies without issue, it is my wish and desire that the Farmers Bank & Trust Company take possession and control of said farms managing same as trustee under properly executed bond before the County Court of Henderson County. After the Bank has qualified they shall each year pay one half of the net proceeds from these farms to the living children of my nephew Hugh N. Helm and the other half of the net proceeds to the Session of the First Presbyterian Church of Henderson for the express purpose of the upkeep and equipment of the Dora Ford Letcher Memorial Church House. By action of the session of the First Presbyterian Church, this Church House has been set aside as a memorial to my deceased wife and it is now my purpose to further perpetuate her memory by partially at least pro-

viding for the upkeep of this memorial building. Therefore to still further that purpose the entire proceeds from these farms upon the death of all of the children of my nephew Hugh N. Helm, shall be given annually by the Farmers Bank & Trust Company to the Session of the First Presbyterian Church for the purpose mentioned. Therefore upon the death of all the children of Hugh N. Helm I give, devise and bequeath these Ohio River farms to the First Presbyterian Church in trust with the direction that the net income be used first toward the upkeep of the Church House. If any year there is a balance which in the opinion of the Session is not necessary to be used on the Church House property— then same shall be used in the Benevolent Fund of the Church—but no part of said income farms shall be used for current Church expenses. In designating the Farmers Bank & Trust Company of Henderson, Kentucky, as trustee it is upon the idea that said bank shall continue to exist as a corporation doing a trust business— but if non-existent at the time this portion of my will becomes effective, then the County Court shall use its judgment in having a proper banking institution to qualify.

"The foregoing provision is based upon the assumption that this Church House shall forever be a memorial building to the memory of my wife. If, however, some future action of the Session of said Church should decree otherwise, then these farms shall go in fee simple to the Synod of the Presbyterian Church, U. S. of Kentucky."

Gibney Oscar Letcher, the only child of Dr. Letcher, died without issue on June 8, 1942. The relevant parts of his will are as follows:

First Item directs payment of debts;

Second Item makes two personal bequests of money to employees;

Third Item is in these words, "Reference to the Will of my beloved father, Dr. James H. Letcher, is hereby made for the disposition of my Ohio River and Green River Farms";

Item Four makes several bequests of portraits, silverware and personal effects;

The Fifth Item, the residuary clause, is as follows:

"All my other property, real, personal and mixed, I hereby give and bequeath to my wife, Katherine H. Letcher."

This action was brought by the widow of Gibney Oscar Letcher, in which the Farmers Bank & Trust Company as trustee under the will of Dr. James H. Letcher, and Hugh N. Helm, Jr., Horace B. Helm, Dorothy Helm Hennessy, The First Presbyterian Church of Henderson, and the Synod of the Presbyterian Church, were named as defendants.

She alleged that Item 2 of the will of Dr. Letcher was void because it created a perpetuity in violation of KRS 381.220, and further, because it was violative of KRS 273.090; that inasmuch as her husband, Gibney Oscar Letcher, died without issue, the farm lands, as devised under the void will of Dr. Letcher, passed to her husband under the laws of descent; and that under clause 5 of her husband's will she became the owner in fee of the farming lands. She asked the court to adjudge the will of Dr. James H. Letcher invalid, and that Dr. Letcher be adjudged to have died intestate as to the lands in question, and that it be further adjudged that the lands descended to, and vested in, Gibney Oscar Letcher, the only son and heir at law of Dr. Letcher, and further to adjudge that on the death of Gibney Oscar Letcher, the farming lands vested in her as the sole devisee under the will of her husband.

Special demurrers were filed on the ground that the plaintiff did not have a right to maintain the action. These were overruled. General demurrer was filed, which also was overruled.

The defendants below, appellants here, then filed answer and counterclaim, in which they denied the allegations of the plaintiff. The answer alleged affirmatively that Hugh N. Helm was born in 1881 and was living at the time of Dr. Letcher's death, and that Hugh N. Helm had three children, all of whom were living at the time of Dr. Letcher's death, the first having been born in 1907, and the last in 1917. They further set out that the Dora Ford Letcher Memorial Church House was a memorial to Dr. Letcher's wife and that it was not used as a place of public worship or as a church, but for charitable and humane purposes, and consequently, was not subject to, or controlled by, the statute forbidding per-

petuities. It further stated that the Synod of the Presbyterian Church does not erect or maintain houses of public worship, or churches, or places of public instruction, and does not contribute to the current expenses of churches, but that it receives money, property, and contributions, which are used for home missions, its orphanage, and for the education of worthy persons in schools and colleges. The answer was further made a counterclaim and the court was asked to construe the will of Dr. Letcher and to determine what rights the defendants had thereunder.

The plaintiff below demurred to this answer and counterclaim, and the court sustained the demurrer. The defendants declining to plead further, the court adjudged that the plaintiff below was entitled to the absolute and fee-simple title to the 518 acres of land described and devised in Item 2 of the will of Dr. James H. Letcher, and adjudged that the provisions of Item 2, which undertook to dispose of the remainder interest after the death without issue of his son, Gibney Oscar Letcher, were invalid and void as being violative of the provisions of the statute against perpetuities, and that upon the death of the testator, the lands descended by inheritance to his only son, Gibney Oscar Letcher, and that the plaintiff, under the residuary clause of her husband's will, became the sole owner of the fee-simple title to the lands. From that judgment this appeal is prosecuted.

In an extraordinarily well prepared brief, counsel for appellant take the position that the trial court erred in failing to sustain the special demurrer or the general demurrer of the appellants to the appellee's petition; that the special demurrer should have been sustained because under the will of Gibney Oscar Letcher, his widow, Mrs. Katherine Hodge Letcher, was not the sole owner of the lands and could not maintain a suit as the sole owner thereof; that the general demurrer should have been sustained (1) because even though the will of Dr. Letcher created a perpetuity, yet, under the will of G. O. Letcher, these lands were not devised to his widow but by reference to the will of his father under clause 3, the will of his father was incorporated into, and became a part of the will of the son; (2) that Item 2 of the will of Dr. Letcher does not violate KRS 273.090 wherein it is provided that no church or society of Christians shall

take or hold more than 50 acres of ground; and (3) that the will of Dr. James H. Letcher is not violative of the rule against perpetuities.

On the other hand, the appellee, in an equally well prepared brief, insists that the judgment of the court was proper.

We find no difficulty whatsoever in the first provision of Item 2 of Dr. Letcher's will. Had his son, Gibney Oscar, died leaving issue, the estate then would have vested in fee simple in such issue. But, having died without issue, we must face the provision of the will after that point, and if the devise becomes violative of the rule at all it commences where the testator undertakes to appoint a trustee upon the death of his son without issue and directs that the trustee hold and manage the land until the children of Hugh N. Helm are dead. From that point we meet the real difficulty. Appellee insists that it is here that the violation of the rule against perpetuities commences.

It would be impossible here to go into the history of the rule and its application at any length. It had its inception in the old English common law and was effective in this jurisdiction and in the other jurisdictions of our Country as a common-law doctrine. Its purpose was to prevent by will or deed the suspension of the power of alienation to some remote period. Our section of the statute known as the Rule Against Perpetuities, which is KRS 381.220, was enacted as declaratory of the common-law rule. That section reads as follows: "The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives, in being at the creation of the estate, and twenty-one years and ten months thereafter."

Our courts have consistently held that the right to make a will is statutory and when exercised must conform to statutory requirements. In determining whether or not the rule has been violated, we must look to the possibility of what might occur rather than to probabilities. In Tyler et al. v. Fidelity & Columbia Trust Co., 158 Ky. 280, 164 S. W. 939, 941, this court said: "The test, therefore, for determining the existence of a perpetuity, is not whether the event or contingency named upon which the estate devised may vest in the ultimate

takers does happen or may happen, but whether it is possible that it might not happen within that time. If it is possible that the event or contingency upon which the estate will finally vest may not happen within the limit prescribed by the rule against perpetuities, the instrument is void, or at least so much thereof is void as relates to this remote event or contingency. In other words, a possible perpetuity is a perpetuity denounced by the statute. * * *

" 'The law of this country, as well as that of most other civilized nations, has given to every one of competent capacity, the power of directing by will to whom his estate, shall pass. But, although it is reasonable that a man shall have power of thus disposing of his estate after his death, it is obviously as reasonable that he should not have the power of directing its disposition for all time to come; and the law, while, for beneficial purposes, it concedes to every one the power of directing to whom his estate after his death shall go, has at the same time been careful that this power should not be abused. To prevent, therefore, estates from being locked up forever from commercial and social purposes, it has forbidden perpetuities, and fixed a period beyond which no one is allowed to direct how his estate shall devolve.' "

Therefore, in the instant case, the question is not, will the interest probably vest within the period, but must it necessarily vest? This question must be considered as of the time the will takes effect. If at that time it is possible that the interest may not vest within the required period, then it violates the rule. There seems to be justification for adherence to the view of possibilities rather than probabilities. Otherwise, it would be necessary to wait in uncertainty for subsequent events to determine whether the will is good or bad.

In testing the validity of the will in the instant case, let us observe it, then, in the light of possibilities. At the time Dr. Letcher died and the will was probated, Hugh N. Helm was 51 years old and living. He had three children born in the years 1907, 1910 and 1917, respectively, all of whom were living at the time of testator's death. The trustee named to hold and manage the land was directed to pay each year one half of the net proceeds to the children of his nephew, Hugh N. Helm, and the other one half to the Session of the Church. In the

light of that situation, throughout how long a period of time would it be possible for the trustee to be required to pay the one half of the net proceeds to the children of Helm? We said in Beall v. Wilson, 146 Ky. 646, 143 S. W. 55, 57: "In applying the rule against perpetuities, it is an invariable rule that regard is to be had for possible, and not merely to actual events; that is, to render future estates valid, they must be so limited that in every possible contingency they will vest within the statutory period. Men and women are presumed capable of having children as long as they live." See also Brown v. Columbia Finance Trust Co., 123 Ky. 775, 97 S. W. 421; United States Fidelity & Guaranty Co. v. Douglas' Trustee, 134 Ky. 374, 120 S. W. 328, 20 Ann. Cas. 993, and Simes Law of Future Interest. If the above rule be true, in order to escape a violation of the rule, we would be compelled to put a limitation upon the life expectancy of the nephew Helm, as well as on the possibility of his having other issue.

The appellants take the position that the devise was to a particular class, namely, the living children of Helm. Consequently, they insist that those born after the death of the life tenant, if any, would not be permitted to share in the proceeds. They cite a number of authorities in support of their contention. But, it will be noted, that these cited authorities exclude the children, or members of a class, who are born after the time fixed for the distribution of the corpus of the estate. In the instant case there is no distribution of the corpus at all, but only a distribution of the profits, which is to continue until all of the children of Hugh N. Helm are dead. In Patterson's Ex'r v. Dean, 241 Ky. 671, 44 S. W. 2d 565, 569, it was said: " 'It is well settled in this state that, where there is a devise to the children of another than the testator, such devise includes all the children of such persons living at the death of the testator as well as any that may thereafter be born, where such person is a near relative of the testator.' "

To take appellants' view would mean the adoption of a rather strained construction in order to avoid the application of the rule. Considering the obviously possible length and remoteness of time the trustee is to control and manage the estate before it passes to the Session of the Church in trust, we are constrained to believe there is a violation of the rule.

We now come to that portion of the will dealing with the estate after the death of all the children of the nephew Helm. Up until that time the trustee merely manages and controls the estate. The will provides "therefore, upon the death of all the children of Hugh N. Helm, I give, devise and bequeath the Ohio River farms to the First Presbyterian Church in trust with the direction that the net income be used first toward the upkeep of the Church House." It will be noted by the above that upon the death of all the children of Helm the devise is to the Session of the Church for the maintenance of some of its own property. The appellants take the view that this devise is not violative of KRS 273.090, which is a positive inhibition against any church or society of Christians holding legal or equitable title to more than 50 acres of land. This church house mentioned in the will appears to be a residence adjoining the property of, and purchased by, the First Presbyterian Church. It was purchased in 1922. Some lien notes were executed by the church as partial payment for the property, which were afterwards paid by Dr. James H. Letcher. In gratitude to Dr. Letcher, and out of respect to the memory of his deceased wife, the church named the house "Dora Ford Letcher Memorial Church House"., Appellants maintain that this church house has never been used as a place of public worship but is used for the meetings of the ladies' circles, for the young people, for the forum of men of the church, Girl Scouts, Men's Bible Class, etc. For all the purposes named above, meeting places are provided in practically all modern churches, and appear to be necessary adjuncts to modern churches. To say that the upkeep of this church house and its maintenance meets the intended meaning of the provisions of KRS 381.260 validating grants for "charitable or humane purpose" would be somewhat of a stretch of the imagination. It would be difficult to excuse that provision of the will in the light of the positive inhibition of KRS 273.090.

To this we have the added difficulty that this estate devised to the Session in trust is to be held as long as the First Presbyterian Church of Henderson may exist, or until its Session shall decide to surrender its interest in the proceeds of the estate and cease to recognize the memorial. The testator hopes it will continue forever. But, be it 50 years, 100 years, or maybe 1000 years from

now, the testator finally rests it in fee simple in the Synod of the Presbyterian Church. This final and ultimate devise not only postpones the vesting of the title for a remote and indefinite period, violative of the rule against perpetuities, but also runs into the inhibition set out in KRS 273.090. Street v. Cave Hill Inv. Co., 191 Ky. 422, 230 S. W. 536; Compton v. Moore, 156 Ky. 544, 161 S. W. 540; Spradlin v. Wiman, 272 Ky. 724, 114 S. W. 2d 1111.

Appellant further insists that if part of the will is valid and part invalid, the valid part should be allowed to stand. That would be true if there were no disturbance of the entire scheme, or if there were separable parts. Obviously, the only separable part of this will is the first portion which gave a life estate to the son, and in the event he had issue, settling the fee in that issue. The vesting here is subject to no condition preceding it except the termination of the life estate. After the first separable part, the remainder of Item 2 appears to us to be one complete and inseparable scheme. To follow this insistence of appellants would result in a division of the testator's intent into two parts, the first being the intent which is consistent with the rule against perpetuities, and the second that which is inconsistent with, or obnoxious to the rule. By discarding the inconsistent and adopting the consistent, we would in fact be altering, if not destroying, the general intent, and substituting therefor a new or different one. See Tyler et al. v. Fidelity & Columbia Trust Company, supra, and cases cited therein.

Appellants further claim that under Item 3 of the will of G. O. Letcher, wherein reference was made to the will of his father, there was an adoption of Item 2 of the father's will. We would yet be in no better position if we adopted that view. The validity of Item 2 must be adjudged as of the date of the death of the testator. The son could not validate an invalid provision by mention of it in his will. Under the separable portion of the will heretofore mentioned, G. O. Letcher had a life estate with remainder to his children. He, therefore, had a defeasible fee in remainder subject to being defeated if he died leaving issue. Coincident with death without issue, he became vested with the fee-simple title to the land and had the right to devise it by will. See Mansur v. Security Trust Company, 279 Ky. 453, 130

S. W. 2d 768; Coots v. Yewell, 95 Ky. 367, 25 S. W. 597, 26 S. W. 179; Baxter v. Bryan, 123 Ky. 235, 94 S. W. 633; Slack v. Downing, 233 Ky. 554, 26 S. W. 2d 497, and Waggener et al. v. Penn et al., 257 Ky. 124, 77 S. W. 2d 427. However, the real purpose of the residuary clause is to dispose of any property that might have been overlooked or forgotten, and certainly would include any property owned by the testator even though he did not at the time know he owned it. This argument of appellants is not persuasive.

By way of resume, let us then see what we really have before us—a testator by will undertaking to create an estate, first, a life estate which might become a fee-simple estate if the life tenant should die leaving issue. Upon the death of the life tenant without issue, the estate then moves under the control and management of a trustee for a period of time that can very possibly reach beyond the period set by the rule against perpetuities. Upon the death of all the children of the nephew, then, in violation of the inhibitions set out in KRS 273.090, to the Session of the Presbyterian Church in trust, and finally, after dangling through a number of years, or perhaps centuries, all dependent on the action of the Session of the Church, he settles it in fee in the Synod of the Presbyterian Church, and that also in violation of KRS 273.090. Were we to adopt the appellants' views, then, like the moving finger in Omar Khayyam's Rubaiyat which "writes; and, having writ, moves on", we would have an estate, which having commenced to move, moves on. So, on through years, perhaps centuries, it would go, but when and where it would stop nobody knows. We must, therefore, reject those views.

We conclude that the court below properly adjudicated the matter. Wherefore, the judgment is affirmed.