J. T. HATCHER, W. S. Cooper, J. R. Pritchard, First Hardin National Bank & Trust, Movants,

v.

SOUTHERN BAPTIST THEOLOGICAL SEMINARY, Attorney General of Kentucky, Respondents.

No. 81–SC–315–DG.

Supreme Court of Kentucky.

March 9, 1982.

As Modified on Denial of Rehearing May 25, 1982.

John L. Arnett, J. M. Collier, Elizabethtown, for movants.

Joseph E. Stopher, Boehl, Stopher, Graves & Deindoerfer, Louisville, Steven L. Beshear, Atty. Gen., Frankfort, for respondents.

PALMORE, Chief Justice.

The will of Mary Cofer Trigg, who died in 1973, provided for a trust fund to be called the Mary Cofer Trigg Trust Fund and enumerated the various assets of which it was to consist. Except as otherwise designated, the income was to be distributed among several named charities. Among the "otherwise designated" items in the enumerated list of assets was the following:

> "Seven hundred (700) shares of common capital stock of the Citizens Fidelity Bank and Trust Company, Louisville, Kentucky, the income from which I direct the Trustee to pay quarterly as received to the Southern Baptist Seminary, Louisville, Kentucky."

Through declaration of stock dividends the number of shares of this stock had grown to 2,336 at the time of the testatrix's death and to 4,380 when this declaratory judgment action for a construction of the will was filed. The trial court held (1) that the additional shares did not become a part of the bequest in favor of the Seminary, but passed to the charities named as principal beneficiaries of the trust, and (2) that the bequest in favor of the Seminary was a dry trust, hence the 700 shares passed to the Seminary outright, free of the attempted trust. On appeal, the Court of Appeals affirmed the second of these holdings but reversed the first. Our opinion is that the trial court erred in both respects.

■ It is elementary, of course, that when property is held in trust the trustee holds the legal title and the beneficiary or beneficiaries are considered to be owners of the equitable title. That the existence of such an arrangement requires the trustee to be given something affirmative in the way of powers and duties originated in the English Statute of Uses, 27 Hen. VIII, c. 10 (1535). The effect of that enactment was to "execute" or transmute the equitable title into legal title. Some uses, however, such as a "use upon a use," were left unaffected by the statute and were recognized and enforced by the chancery courts. Bogert, *Trusts and Trustees*, Secs. 4, 5 (2d ed. rev. 1979). "These interests which survived the Statute of Uses and have been enforced as trusts constitute the basis for the modern system of trust law." *Id.*, Sec. 5.[1]

Although the Statute of Uses did not apply to personal property, "modern courts execute passive trusts of personality either by analogy to the Statute of Uses or on the theory that any trust without a purpose is automatically executed." *Id.*, Sec. 206. See, e.g., *Arnold v. Barber*, Ky., 472 S.W.2d 466 (1971).

The Seminary cites numerous authorities for the proposition that a gift of income without limit as to time will pass the corpus. Ordinarily that may be true, but the fundamental reason lies in the rule against perpetuities, which never has applied to charitable trusts. *Kasey v. Fidelity Trust Co.*, 131 Ky. 609, 115 S.W. 739, 742 (1909); *Pullins v. Board of Education*, 25 KLR 1715, 78 S.W. 457, 458 (1904); Restatement, Trusts *2d*, Sec. 365 (1959).

"The cases uniformly hold that a present charitable trust, limited to endure perpetually or for an indefinitely long period of time, is valid .... The justification for the perpetual charitable trust is that the policy in favor of charity outweighs the policy against taking property out of commerce." Simes and Smith, *Future Interests*, Sec. 1392 (2d ed. 1956).

■ In upholding the result reached by the trial court with respect to the creation, vel non, of a valid trust, the Court of Appeals chose to emphasize the circumstance that there is no time limitation, no eventual "gift over." As we view it, passivity and perpetuality are two separate factors and are not to be confused. A trust is dry, or passive, because the trustee has nothing to do but hold the legal title. A trust that is unlimited in time is void because it violates the rule against perpetuities, a rule that did not exist when the Statute of Uses and Statute of Wills were enacted, but evolved afterward. Cf. Simes and Smith, *Future Interests*, Sec. 1211 et seq. (2d ed. 1956); 61 Am Jur *2d Perpetuities*, etc., Sec. 6. Ordinarily, therefore, a gift of income unlimited in duration would fail as a perpetuity. That was all that needed to be said, for example, in *Arnold v. Barber*, Ky., 472 S.W.2d 466 (1971), in which a testator left the unconsumed portion of his estate remaining at the death of his wife, the life tenant, to his children, "but to be held in trust for them and only the income to be paid them." Once it was determined that

---

1. Roughly speaking, the Statute of Wills, 32 Hen. VIII, c. 1 (1540), made it possible to create and transmit by will the same kinds of interests that could be raised by inter vivos transfer. Cf. Simes and Smith, *Future Interests*, Sec. 31 (2d ed. 1956). "The Statute of Uses (and its successors) applies to trusts created by inter vivos declaration or transfer or by will." Bogert, *Trusts and Trustees*, Sec. 206 (2d ed. rev. 1979).

the gift was not for the lives of the children, but forever, the rule against perpetuities did the rest, and the result would have been the same regardless of whether the trust had been active or passive.

We do not consider *Wilkinson v. Rosser's Ex'r*, 13 KLR 1262, 104 S.W. 1019 (1907), as viable authority for a contrary viewpoint. In that case a testator bequeathed dividends from certain gold mining stock "to be divided into two parts, one to be paid to Mrs. Sarah Easton and her daughter Bettie Easton, as long as they should live," . . . and the other half to be divided equally between the First M. E. Church, South, and the Church of the Nativity, of Maysville. At the death of Mrs. Easton and her daughter "the entire dividends" of the mining stock were to be divided between the two churches. In a suit for a construction of the will and settlement of the estate one of the churches contended that a trustee should be appointed, and in the course of responding this court said:

> "So far as the bequest of the churches is concerned, it vests in them the entire estate in the moiety . . . bequeathed to them in the first instance. Where the income of personal property is devised to one without remainder over, and without contingency, it is a gift of the property itself. There appears no reason why that part of this stock may not be delivered to these churches." . . . etc. 104 S.W. at p. 1022.

Obviously the point that the perpetual duration of a trust is immaterial when the beneficiary is a charity was not raised or considered in *Wilkinson*.[2] Another notable difference between that case and this is that whereas Mrs. Trigg very clearly intended to establish a trust and named a trustee for that purpose, it is probable that the thought never occurred to the testator in *Wilkinson*. This may seem a chimerical distinction, but evidently it was not so considered in the beginning:

> "In other words, when the feoffee is merely to permit another to take the rents and profits, it is a use which is executed by the statute; but where the feoffee is to collect the rents and profits and pay them over to another, it is an active trust which the statute does not execute." Scott, *The Law of Trusts*, Sec. 69 (3d ed. 1967).

What this quotation illustrates, we think, is that the theory or doctrine of the "dry trust" originated and developed in an age when things were very different from what they are today. In medieval times land was the principal asset with which the law was concerned. It made sense to say that if the owner of land held it under a deed that required him and his heirs to let someone else and his heirs have the entire use of it, the user might as well have the whole title himself. Today, however, most trust estates consist mainly of corporate securities, and under both statutory and case-law principles trustees are held accountable for prudent maintenance of the trust funds. This alone, we believe, would prevent nearly any trust involving the holding of corporate stocks from being a passive or dry trust. And if, as in Mrs. Trigg's case, a donor wishes his gift to support a charitable beneficiary continuously through the years, and not be spent for some non-income bearing asset, what sensible purpose would be served by a legal principle that says he cannot do it?

■  In the case before us the trustee has the duty of collecting the income from certain corporate stock and paying it over quarterly to the beneficiary. Presumably, the responsibility of voting the shares of stock also would rest upon the trustee, as well as the responsibility for exercising subscription or conversion options.[3] Should the investment become unproductive, it might

---

2. Likewise, in *Letcher's Trustee v. Letcher*, 302 Ky. 448, 194 S.W.2d 984 (1946), the argument that the rule against perpetuities did not apply was avoided by the court's view that the trust was not for a charitable purpose. The statement toward the end of the opinion that an ultimate gift over to the Synod of the Presbyterian Church would have violated the rule also rests on that premise.

3. These powers, among others, are now covered by statute. Cf. KRS 386.810.

very well be incumbent upon the trustee to sell and reinvest, or to apply to the court for authority to do so. Unquestionably the trustee is charged with the power and responsibility of managing the trust estate prudently. Cf. *Citizens National Bank v. Jefferson*, 88 Ky. 651, 657, 11 S.W. 767, 776 (1889). The care and preservation of corporate stock today involves more than merely keeping the certificates under lock and key. There can be no real question, we think, that this is an "active" trust.

We are in agreement with the opinion of the Court of Appeals that all of the shares added by stock dividends derived from the original 700 shares are to be held as corpus for the benefit of the Seminary. KRS 394.550 expressly says so:

"A legacy of stock regardless of whether it is construed to be general or specific, shall include:

(1) All stock split shares attributable to the devised shares;

(2) All stock dividends attributable to the devised shares;

(3) All shares of stock issued as a result of merger, consolidation, reorganization or other similar action, and attributable to the devised shares; and

(4) All shares of stock issued in exchange for and attributable to the devised shares, received by the testator after execution of the will or by his estate after his death, unless there is in the will or a codicil thereto a manifest intention to the contrary."

The judgment of the Court of Appeals is affirmed in part and reversed in part with directions that the trial court enter a new judgment in accordance with this opinion.

All concur.