ANNIE READ CROCKETT *et al. v.* EDWYNA SCOTT *et.al.*

(*Jackson,* April Term, 1955.)

Opinion filed June 10, 1955.

Rehearing denied December 9, 1955.

92

John D. Martin, Jr., of Memphis, C. S. Carney, Jr., of Ripley, and Stegall & LaRoche, of Murfreesboro, for appellants.

Holmes & Holmes, of Trenton, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

This suit involves the proper construction of a paragraph of the will of Mary C. Person, it is as follows:

"I will, devise and give all the balance of my property, both real and personal, * * * to my sister, Jean M. Sanford * * * for and during her natural life * * * and after the death of my sister, said Jean M. Sanford, I will, devise and give said property to Cora Field and the children of Jean M. Sanford then living and the heirs of such as may be dead for and during their lives. And after their death to their children free and discharged of any further trust, And if any of my sister's children or said Cora Fields should die without children, his or their share go to its next of kin. After my sister's death said property is to go to her children and the heirs of such as may be dead and said Cora Field per capita and not per stirpes for and during their lives and after their death to their children if they have any and if they have none to their next of kin.

"And I further will and devise if my said sister said Jean M. Sanford should die before her children should arrive at twenty one years of age or marry, whichever event should happen first, that said property is not to be divided but is to be kept together and those children that have not married or arrived at twenty-one years of age are to have the income of it until said children marry or arrive at twenty-one years of age."

The Chancellor in a very able opinion held that this provision of the will violated the rule against perpetuities and was therefore void. An appeal has been seasonably

94

prayed, able briefs filed and arguments heard. In addition to reading and considering these briefs along with the opinion of the Chancellor we have spent several days reading a number of cases from various jurisdictions, and text books, on the question. We have done this because of the importance of applying the rule here to the facts of this particular will and because of the interest that we had in the question. We now have the matter for determination.

The cases involving the application of various facts to this rule are legion. It is one of the methods adopted by the judiciary, in the interest of public policy, to prohibit the undue limitation and prolongation of estates. Mr. Gray, in his work on the matter, the rule against perpetuities, says (page 2) that the rule is a mode "adopted by the common law for forwarding the circulation of property which it is its policy to promote." We will not attempt to trace the development of the rule because the law books are full of it and the excellent treaties of Mr. Gray cover the subject. We will say only that the limit, under the rule, for the creation of executory interests to commence, is "within the period of a life or lives in being and 21 years, allowing for the period of gestation." *Eager* v. *McCoy,* 143 Tenn. 693, 228 S. W. 709; *Yarbrough* v. *Yarbrough,* 151 Tenn. 221, 269 S. W. 36, and a host of others.

The controlling rule of interpretation of wills is that the intent of the testator is to govern, and this intent is to be carried out if not in conflict with some rule of law. *Burton* v. *Kinney,* 191 Tenn. 1, 231 S. W. (2d) 356, 19 A. L. R. (2d) 36. When there is such a conflict the will must fail of effect insofar as it violates the rule, not because the intent of the testator does not control his construction, but because the law will not permit this in-

tent to be accomplished. *Harris* v. *France,* 33 Tenn. App. 333, 340, 232 S. W. (2d) 64; Gray: Rule Against Perpetuities, 3rd Edition, Sects. 629, 633. The rule against perpetuities is not a rule of construction but of law, and is to be applied even if the accomplishment of the express intent of the testator is thereby made impossible. *Hassell* v. *Sims,* 176 Tenn. 318, 141 S. W. (2d) 472. A will speaks from the death of the testator, and the general rule is that a limitation is void because in violation of the rule against perpetuities unless it is certain at the time of his death that the estate will vest within the period required by the rule, and, if by any possibility the event upon which the estate is limited may not occur within that time, the limitation is too remote. Gray's Rule Against Perpetuities, Sec. 214 (supra); Tiffany On Real Property, Sec. 180; *Brown* v. *Brown,* 86 Tenn. 277, 6 S. W. 869, 7 S. W. 640; 41 Am. Jur., p. 59. The rule is concerned only with the time in which the title vests and not with the postponement of enjoyment of the estate. Any interest which vests is not affected by the rule however remote the time of enjoyment may be. 41 Am. Jur., Sec. 23, p. 67. *Harris* v. *France,* supra; *Hassell* v. *Sims,* supra. The possibility that the property may vest within the rule is fatal. *Hassell* v. *Sims,* supra. And in considering whether a future interest might vest beyond the expiration of the time covered by the rule both men and women are considered as capable of having issue as long as they live. *Letcher's Trustee* v. *Letcher,* 302 Ky. 448, 194 S. W. (2d) 984.

The testatrix died in 1880. At the time of her death the first life taker Mrs. Sanford was 50 years old. At that time Mrs. Sanford had six children, one of whom died prior to the death of his mother. Cora Field was a niece of the testatrix, she being the daughter of a brother of the

testatrix, Charles G. Field. At the time of the death of the testatrix Cora Field was 13 years of age and was younger than the older Sanford children and older than some of the younger children. Cora Field is the mother of the appellants here. She lived in the home of her aunt, Mrs. Sanford, from the date of the testatrix' death until her marriage some 10 years later. By decree of the County Court of Lauderdale County, in 1893, it was adjudged that E. E. Sanford and Mary Person (appellees predecessors in title) were the owners in fee of the land by controversy each owning an undivided one-half interest. By a chain of deeds and devises title passed from these persons to the several appellees. Cora Field conveyed her interest in this property to some of the predecessors in title of the present appellees after she reached her majority.

"There is no difficulty in reaching the decision that the testatrix meant to give to Jean M. Sanford, a life estate in the property devised under the will, and which has been referred to by counsel for the complainant, as the life estate at the first level. It is the opinion of the Court that it was the intention of the testatrix to devise the second life estate, to become effective at the death of Jean M. Sanford, to Cora Field and such of the children of Jean M. Sanford as were then living at the death of Jean M. Sanford, including any children born to Jean M. Sanford after the death of the testatrix. If any of the children of Jean M. Sanford predeceased her, and left heirs surviving, then such heirs would take the same interest that their parents would have taken if living, which would be a life estate. In other words, the second life tenants would consist of Cora Field, in the event she survived Jean M. Sanford, and the surviving children

of Jean M. Sanford, including *those born after the death of the testatrix,* and the heirs of such children that might have predeceased Jean M. Sanford, such heirs being living at the death of Jean M. Sanford. All of these above named parties were devised a life estate. After the death of the above life tenants of the second level, the fee was devised under the will, to the children of said second mentioned life tenants, with the provision that the death of any of the children of Jean M. Sanford, dying without children or the said Cora Field, dying without children, his or their share would go to their next of kin.

"Likewise, from the terms of the will, it was the intention of the testatrix that this property as to the second life estate would be divided between Cora Field and the children of Jean M. Sanford, then living and the heirs of such children of Jean M. Sanford that might be dead at that time on a per capita division, this division applying to the life estate of the second level which would mean that the children of Jean M. Sanford, living at the time of her death, and the heirs of any deceased child of the said Jean M. Sanford, who had died prior to her death, and Cora Field, if living would each take for life, an equal division in this property." (Emphasis ours.)

So says the Chancellor in his very able opinion. We concur and agree fully to his conclusions thus expressed.

 We now come to consider the provisions of this will under the well settled principles as are governed by the rule against perpetuities hereinbefore set forth. And in consideration of this will under those provisions the following very pertinent statement of the Chancellor is applicable:

"A provision in the will that a life estate vest in children of Jean M. Sanford, living at the death of Jean M. Sanford, includes in its provision the possibility of children born to Jean M. Sanford after the death of the testatrix. This possibility of issue is effective regardless of the age of Jean M. Sanford, at the time of the death of the testatrix, and for the purpose of determining whether there is a violation of the rule against perpetuities, the possibility of issue is never considered extinct as long as a person lives."

See authorities above cited on this question as well as *Bigley* v. *Watson,* 98 Tenn. 353, 39 S. W. 525, 38 L. R. A. 679; 41 Am. Jur. Sec. 26, p. 71; 2 Blackstone, page 125.

"This means that *such child born to Jean M. Sanford would not be a life in being,* during the life of the testatrix. Likewise, the provision of the will that the heirs of any child of Jean M. Sanford, who had predeceased her, would become life tenants of the second level, clearly makes the *possibility of such heirs being born after the life of the testatrix.* Then the recitation in the will that after the death of these second life tenants, the property would go to their children, *means that such remaindermen could be the children of children who were born after the death of the testatrix,* that is, 'unborn son of an unborn son,' which certainly, in the case before the Court, could be a period of time beyond the life or lives in being and 21 years and period of gestation, and would violate the rule against perpetuities." (Emphasis ours).

We have again in the last two paragraphs quoted from the excellent opinion of the Chancellor the obvious and only reasonable conclusion from the will when considered in the light of the rule against perpetuities.

The appellees relied below and here upon our case of *Hassell* v. *Sims,* supra. The Chancellor thought this case in point, as do we. Certain points of similarity in the two are of interest. In the *Hassell* v. *Sims* case there was a deed creating a life estate in the wife with a second life estate to the children of the grantor and the wife equally and then the fee over to the grandchildren of the grantor in the deed. In this case this Court, speaking through the late Mr. Justice McKinney, held that the deed in that case was void as creating an estate contrary to the rule against perpetuities. In the case now before us we have a will which creates a life estate in Mrs. Sanford; the second life estate "per capita" in her children and Cora Field and then third we have a fee to the grand-nieces and nephews of the testator or to whatever children of the children of Jean M. Sanford and Cora Field might leave. Obviously there is quite a similarity in facts. Thus we can readily see how the Chancellor followed this case.

Just one quotation from *Hassell* v. *Sims,* supra [176 Tenn. 318, 141 S. W. (2d) 473]:

"To avoid violation of 'rule against perpetuities,' it is not sufficient that future interests may or probably will vest within limits of rule, nor is it necessary, in order to call for application of such rule, that such interest will probably or certainly vest beyond such limit, but possibility that it may do so is fatal to its validity."

Counsel for the appellants argue very forcefully that there is quite a difference between the two cases, primarily because of the difference between a deed, in the *Hassell* v. *Sims* case, and the will in the instant case. As we gather from reading the authorities the difference only comes about in the computation of time, since the

deed becomes effective at delivery, while the will takes effect at the death of the testator. This distinction is recognized in the last page and paragraph of the opinion in the *Hassell* v. *Sims* case and in that case this difference is pointed out by showing that the grantor in the deed in question was still alive yet the deed had been made some 30 years before this litigation, in the *Hassell* v. *Sims* case, arose. Obviously this of course, under a factual situation, would make a good deal of difference but we must remember that the rule against perpetuities is a positive rule of property, and is applicable alike to conveyances by deed or will or otherwise.

We might illustrate this difference by the suggestion that in a devise to the children of a testator for life with remainder to their children would be perfectly valid because at the time the will becomes effective (that is the death of the testator) it would not be possible that he have other children. We take the case of the deed, which becomes effective at delivery, the donor or grantor, as in the *Hassell* v. *Sims* case, might have other children. This is really the only distinction.

In the case that we now have for decision, it is not the children of the testatrix who are to take, but the children of a sister of the testatrix, Jean M. Sanford, who was living at the effective date of the will and who could, legally, give birth to other children.

And again the able Chancellor says:

"Giving to this case every presumption in favor of the vesting of the interest and the duty, if possible, to reconcile ambiguous clauses in favor of vesting, and the intention of the testatrix to devise a vested interest, the Court, when it applies the rules of property and of law set out above, can reach no other conclusion than that the will violates the rule against

perpetuities and is too remote. The question is, does this apply to all of the remaindermen or just to the descendants of Jean M. Sanford. The complainants in their reply brief, insist even should descendants of the children of Jean M. Sanford, be barred from any interest in this property, that the complainants, children of Cora Field, were not effected thereby and as to them the rule is not violated and they are entitled to recover."

This is the primary insistence of the appellants before us and is the question that has given us most concern and the one in which we have made a rather extensive, independent investigation. Counsel for the appellants quotes and relies upon what Mr. Gray in his Rules Against Perpetuities, 3rd Edition, p. 342 says:

"When gifts are made to several persons by one description, but the amount of the gift to one is not effected by the existence or non-existence of the others, then the gifts are separable."

Again he states, page 343:

"Although the amount of each legacy is dependent upon the number of legatees, yet, if this number must be determined within the required limits, the gifts are separable."

Still again, page 345:

"When, on a gift to a class, the number of shares is definitely fixed within the time required by the rule against perpetuities, the question of remoteness is to be considered with reference to each share separately."

This brings us to a study as to what the intention of the testatrix was in bestowing her bounty. The Chancellor says:

"The provisions of the will as to both Cora Field and Jean M. Sanford, are all embraced in the same item of the will, and after giving a life estate to Jean M. Sanford, all of the remaining part of this section where Cora Field is mentioned, likewise Jean M. Sanford or her descendants are mentioned. The testatrix appears to have in mind Cora Field, in the same relationship and for the same consideration as the children of Jean M. Sanford. The fact Cora Field was named has no special significance other than to show she was not a child of Jean M. Sanford, and naming her created no legal distinction. (*Harris* v. *Alderson,* 36 Tenn. 250; *Tate* v. *Tate,* 126 Tenn. [169, 148 S. W. 1042]).

"This is especially true as the testatrix specifically provides that 'after my sister's death, said property shall go to her children and the heirs of such as may be dead and the said Cora Field per capita and not per stirpes, for and during their natural lives'. From this, the testatrix was saying that at the death of Jean M. Sanford, Cora Field would be on equality as a life tenant with each of the surviving children of Jean M. Sanford, and each of the heirs of any deceased child of Jean M. Sanford. Likewise, the will contains the statement that should Cora Field die without children, his or her or their shares to go to next of kin, who would be the heirs of Jean M. Sanford. If Cora Field died before the testatrix, without children, another line of inheritance or disposition, under the will, would have taken place."

 We thoroughly agree with this statement and reasoning. There is one other reason that seems to us, from the stipulation and under the will, that places Cora Field in exactly the same relationship to Jean M. Sanford

as were Jean M. Sanford's children, in the view of the testatrix. This is the fact that Cora Field lived with the Sanford children and was obviously considered just as one of these children. Here the testatrix in bestowing her bounty on her relatives picked out her sister Jean M. Sanford and then the children of Jean M. Sanford and threw in another niece who was making her home with these children to share on an equal basis.

"The general rule seems to be that where there is a gift to several persons by one description, which gift is void as being against the rule of perpetuities, the gift is not separable so as to stand as to certain members of the class and fall as to others, if so to separate the gift would tend to destroy the testamentary scheme of distribution. For example, where there is a general scheme essentially for the benefit of a class, such as a testator's grandchildren, all of whom are presumably the equal objects of his bounty, and the devise as to part of them is invalid under the rule against perpetuities, the whole devise must fall, since to uphold part as valid would be to work an injustice between the members of the class." 41 Am Jur., Sec. 58, p. 102.

To state this rule, in view of the factual situation which we have stated above, is to answer the able argument of the appellants. These bequests are so interwoven and connected as to us seem to be inseparable for reasons above stated. In 70 C. J. S., Perpetuities Sec. 16, p. 595 we find language which is indeed very applicable to that herein, which is supported by decisions from many jurisdictions. The writer of this work says:

"In other words, where the gift is to a class, the class must be such that all the members thereof must necessarily be ascertained and take absolutely vested

interests within the period specified by the rule against perpetuities, and if, because of a violation of the rule, a gift or limitation is void as to any of the class to which it is given it is void as to all.''

We think that the statements of Mr. Gray above in reference to separability are those that are applied ''When interests or estates in property are limited to the members of a class of persons in such terms that the amount or extent of the interest given to each member is unaffected by the number of members or the existence or nonexistence of the other members, a gift or share which will necessarily vest, if at all, in one member of the class within the limits specified by the rule against perpetuities is not rendered objectionable to that rule by the remoteness of a gift to another member.'' 70 C. J. S., Perpetuities, Sec. 16, p. 596.

We have read a number of these cases and can readily see the distinction that can be made from a case of the kind from the factual situation under the will before us. Having given the matter quite a lot of study and considerable thought we are satisfied that the interests under the will now before us are not separable so as to avoid the rule here invoked.

For the reasons above stated we have concluded that the Chancellor was correct in the decree rendered below. It is therefore affirmed with costs against the appellants and the sureties on their prosecution bond.