ELLEN JANE FEHRINGER et al., Appellants,

*v.*

HULDA FEHRINGER and DOROTHY SEEBECK, Appellees.

439 S.W.2d 258.

(*Jackson,* April Term, 1968.)

Opinion filed March 26, 1969.

C. W. MILES, III and W. M. MILES, Union City, for appellants, MILES & MILES, Union City, of counsel.

J. HOWELL GLOVER and JOHN W. HART, Union City, for appellees.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

In 1933, Anthony L. Fehringer died testate, survived by two sons, Louis and Anthony J., and two grandchildren, Marie Fehringer Hartman and Vincent Fehringer, the children of his son John, who predeceased him. His will contained the following clauses pertinent to the determination of this appeal:

"SIXTH: I hereby give, devise and bequeath unto my two sons, Louis Fehringer and Anthony Fehringer,

the following described real property situated in the County of Obion, State of Tennessee to wit: Seventy-five acre tract of land located and situated in Section 12, Route 1, Obion County, Tennessee, known as the Fehringer Farm, to have and to hold for and during their natural life only and upon death of either of my said sons their interest in the above described real property, I hereby, give devise and bequeath unto the *heirs of his body* * * *'' (emphasis added).

"SEVENTH: All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situated, of which I may be entitled at the time of my deceased, I give, devise and bequeath to my two sons, Louis Fehringer and Anthony J. Fehringer, share and share alike.''

In 1960, Louis brought suit to have the will construed and to sell the farm for partition. The suit, *Fehringer v. Fehringer*, 212 Tenn. 75, 367 S.W.2d 781 (1963), was concluded in this Court, where it was held Louis had a life estate in half of the farm with a contingent remainder in the heirs of his body, who at that time could not be ascertained; that Anthony L. had had a life estate in one-half, and the remainder after his death in 1949 had vested in fee simple in his daughter, Ellen Jane. It was also held that the farm could be sold for a partition.

Louis died testate in March 1965, leaving his estate to his widow, Mrs. Hulda Fehringer, who brought this suit (revived after her death in the name of her sole heir and beneficiary Dorothy Seebeck) to set up a one-fourth interest in the farm.

The Complainant's theory of suit, with which the Chancellor agreed, is that when Louis died without heirs

of his body, the reversion in the undivided one-half interest, after the contingent remainder, vested in fee in Anthony L.'s estate, and passed under the residuary clause, Item 7, of his will, to Louis and Anthony J. That on Louis's death, one-half of this one-half interest passed to Louis's widow, Hulda, and through her to Dorothy Seebeck.

An alternative theory of the Complaint is, that if Anthony L. died intestate as to the reversion, one-third of this one-half passed to Louis, as heir, and through him to Dorothy Seebeck.

The theory of defense is that Louis owned no interest he could transmit. That under the Sixth Item of Anthony J.'s will, the contingent remaindermen were Louis' heirs at law, those who would take his property according to the statute of descent and distribution, T.C.A. 31-101. And the property being ancestral property, it would go under the statute to Louis' nearest relatives on his father's side. It was contended that this, in effect, had been the holding by this Court in the first case, and is the law of the case.

As indicated, the Chancellor held the reversion passed under the residuary clause, so Dorothy owned an undivided one-fourth interest in the farm, and was also entitled to this share in the rent realized on the farm after Louis' death.

Appellant's argument that the first Fehringer case settled the main issue in their favor, and is the law of the case, seems to flow from the statement made in that opinion that the "remaindermen" could only be determined at the death of Louis Fehringer. From this statement it is reasoned and argued that the Court had in mind

that there would necessarily be remaindermen. And that since the heirs of Louis Fehringer could comprise such a class, that the Court, in that case, held, in effect, in favor of Ellen, Vincent, and Marie Hartman, Appellants.

This contention is based on a misconception of this Court's holding in the first case. Instead of defining a class, the Court purposefully refrained from doing this, conscious of the two possibilities which might arise in the future; one of which has arisen in this case.

■ Since, neither expressly nor by implication was the proposition contended for by appellants decided in that case, but, instead, was expressly passed over as "moot", not ready for decision, the case is not *res judicata* of the question presented by the appeal. *Estill v. Taul*, 10 Tenn. 467, 2 Yeager 467, 24 Am.Dec. 498; *Hull v. Vaughn*, 23 Tenn.App. 448, 134 S.W.2d 206.

Although the Court used the word "remaindermen" in its opinion, it was not holding that in fact there had to be remaindermen, and that these could consist of the heirs of Louis. The remainder was recognized as contingent, and not ready for definition.

Appellants bottom their main contention, that the property vested in remainder in those who would be Louis's heirs to ancestral property under the Statute of Descent and Distribution, on the cases of *Spencer v. Stanton*, 46 Tenn.App. 688, 333 S.W.2d 225, and *Butler v. Parker*, 200 Tenn. 603, 293 S.W.2d 174. In *Spencer*, Judge Carney, quoting at length from Chancellor Marable, one of the finest legal minds to grace the Bench of this State, held that when a limitation is in favor of the "heirs" of a designated person, or is in other words of similar import, then, unless a contrary intent of the

testator is found from additional language or circumstances, the persons so described by the limitation as conveyees or devisees are those who, under the application of local law, would succeed to property of the type which is the subject matter of the conveyance, if such ancestor died owning the property and intestate at the time when the group is to be ascertained.

Applying this principle, which was taken verbatim from 3 Restatement of the Law of Property, sec. 305, p. 1671, it was held that the meaning of the word ''heirs'' must be determined in Tennessee by our Statute of Descent and Distribution, T.C.A. 31-101, and in that case, the class would include only those persons who would be the ''heirs'' of the conveyor under the Statute if he had died intestate. And that the property, being ancestral, would descend as such.

However, this conclusion was dictated by the terms of the testator's will, which expressly vested the remainder in the life tenant's ''heirs''.

■ That is, of course, not the situation in the present case. Here, the testator's will expressly reserved the remainder ''unto the heirs of his (Louis') body'', a remainder altogether different in its meaning and effect from a remainder in favor of ''heirs''.

■ It is settled law in Tennessee that in its primary sense, a remainder to the ''heirs of his (life tenant's) body'' is a remainder to the life tenant's *lineal descendants*. This was affirmed in *Campbell v. Lewisburg & N. R. Co.*, 160 Tenn. 477, 26 S.W.2d 141; and *Manhattan Savings Bank & Trust Co. v. Bedford*, 161 Tenn. 187, 30 S.W.2d 227.

On this proposition, it is to be noted that T.C.A. 64-103, which abolishes the rule in Shelley's case in Tennessee recognizes that there is a distinction between the terms "heirs" and "heirs of his body", by providing for the abolition of the rule in case of the use of either of the terms in a conveyance or devise.

Perhaps the clearest statement of the meaning of the words "heirs of the body" is to be found in the same authority cited in Appellant's main authority, *Spencer v. Stanton*, supra. This is Restatement of the Law of Property, Future Interests, Chapter 23, sec. 306, p. 1695 which is as follows:

> "When a limitation is in favor of the 'heirs of the body' of a designated person, or is in other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, the persons so described by the limitation as conveyees are the lineal descendants of the designated ancestor who under the applicable local law would succeed to the property if such ancestor died owning the property and intestate at the time when the group is to be ascertained * * *"

The text continues:

> "*Other words of similar import.* The words 'heirs of the body' are the words most frequently employed to describe the lineal descendants of a designated ancestor who succeed to his interest in his property on his death intestate. Other words, however, may be used with the same meaning and, when they are so used, they are 'words of similar import.' Thus the words 'bodily heirs' and 'lineal descendants as would by law inherit' are, unless a contrary intent of the conveyor

is found from additional language or circumstances, construed to refer to the same persons as are described by the words 'heirs of the body.' ''

We cite Sec. 306 with approval, as it is consistent with our holdings. However, ''Other words of similar import'' are not to be considered as limited to the examples given in the second quote.

In applying this primary meaning of the words ''heirs of the body'' we have, consistent with the law, searched the will for a contrary intent of the testator, and find nothing to indicate that he did not intend for this term to be applied in its accepted legal sense. To the contrary, in view of testator's outright bequest to the lineal descendants of his son John, and having in mind the idea of equality of treatment of his beneficiaries, a stronger argument could be made in favor of lineal descendants as remaindermen than otherwise.

We have examined *Butler v. Parker,* supra, in the light of Appellant's argument, but find no intention in that opinion to modify the previously accepted proposition that the heirs of the body of a life tenant are, in the absence of any indications in the will to the contrary, his lineal descendants. In *Butler v. Parker,* the deed was to A, and at his death to his bodily heirs. Because the arrangement of the words differed from the usual statement, ''to [A] *for life,* and at his death to his bodily heirs'', the contention was made the grantee took an estate tail, converted into a fee simple by T.C.A. 64-102. The Court held, however, that a conveyance ''to [A] and at his death to his bodily heirs'' was equivalent to a conveyance ''to [A] for life and at his death to his bodily heirs'', so that the property would not vest

in the grantee in fee, but would vest an estate for life in the grantee, with a remainder to his children. While in discussing the effect of the abolition of the rule in Shelley's case by T.C.A. 64-103, the Court said: "The conveyance today would vest in the grantee a life estate with a contingent remainder in his *heirs*", it is obvious the word "heirs" was not used with the intention to remove the recognized distinction between the terms "heirs" and "heirs of his body". There can be no doubt as to the meaning of the Court, as the opinion goes on to say:

"Clearly under this statutory provision the heirs or heirs of the body of the grantee which before would have only enlarged the life estate of the parent into a fee has the result of limiting the interest of the grantee in the property devised to a life estate with a contingent remainder in fee to those who at the death of the life tenant *will answer the description of the heirs of his body.*"

Since in the present case "heirs of his body" means lineal descendants, and since Louis died without lineal descendants, the contingent remainder failed and the interest reverted to the estate of Anthony L. Fehringer. The question then arises, whether this reversionary interest passed under the residuary clause of Anthony L.'s will, or whether he died intestate as to it. The Chancellor held the interest passed under the residuary clause, and we think in so holding he was correct.

Appellants argue that as the residuary clause disposes of "all the *rest, residue* and *remainder* of my estate", it can have no application to the contingent remainder, which had already been disposed of in a preceding item.

594

Since this contention is against our authorities, it cannot be sustained. Phillips' Pritchard Law of Wills discusses this subject and says of a general residuary bequest of ''all the rest and residue of my estate'' that it not only carries to the residuary legatee such of the testator's property as the testator did not attempt to dispose of by his will *''but also such as was not effectually disposed of thereby * * * the presumption being that the testator did not intend to die intestate as to any part of his property and took away some of it from the residuary legatee only for the benefit of the particular legatee.''* Phillips' Pritchard Law of Wills sec. 458.

This proposition is not as unreasonable as Appellants seem to think, as by the very nature of a contingent remainder there continued in the testator, at the very time of its creation, a distinct possibility that the contingent remainder would fail for lack of a class in which to vest, and because of this a reversionary interest exists which passes under the residuary clause. This possibility of reverter did not arise after death, but arose when the contingent remainder was created, and is an interest which passed under the residuary clause.

In *Manhattan Savings Bank & Trust Co. v. Bedford*, 161 Tenn. 187, 30 S.W.2d 227, the devise was of a half interest to each of two life tenants with remainders ''to the heirs of his body.'' And Justice Swiggart, who was not given to loose reasoning or writing, said that, since ''the will contains no residuary clause, nor any provision disposing of the reversion, in the event of death of either of the life tenants * * * without leaving heirs of his body'', the reversion passed as intestate property to the heirs at law of the testatrix.

The conclusion here reached is that which is compelled by a proper construction and application of T.C.A. 32-301.[1]

In *Reeves v. Reeves,* 73 Tenn. 644 (which is interesting for its dissents and because a petition to rehear resulted in reversal of the first holding), it was held under this statute, that exception of certain land from a residuary devise for the purpose of giving it to another devisee would not prevent the excepted land from going to the residuary devisee, if the specific devise to the other person failed or lapsed or was void; that such a result would only be reached where there was a discernable intention to take the excepted property from the residuary devisee. And in *McDonald v. Ledford* (1917), 140 Tenn. 471, 250 S.W. 312, it was stated that this Code Section codified the common law presumption against partial intestacy and that its provision in this respect is applicable when the words used, by any fair interpretation, would embrace the property not otherwise devised; in the present case, the reversion.

Because of the sincerity and vigor with which Appellant's counsel have pressed their contentions, we have considered them fully and at some length, but we are constrained to the conclusion that the Chancellor correctly decided the case, including the matter of the division of rents from the land, and that his decree should be affirmed. It is accordingly so ordered. The case is re-

---

[1] 32-301. *Operation of will.*—A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to him, or in which he had any interest at his decease, unless a contrary intention appear by its words and context.

manded to the lower court for such further proceedings as may be necessary, not inconsistent with this opinion.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.