COMMERCE UNION BANK, Trustee, and C. Dorris Rippy, Trustee, and Charles C. Trabue, Jr., Trustee, Plaintiffs-Appellees,

v.

WARREN COUNTY, Tennessee, Defendant-Appellee,

v.

Charles Magness COWDEN, John S. Cowden, Frederick Eugene Cowden, Ernest Smallman, III, Elizabeth Smallman Fisackerly, William Magness Smallman, Defendants-Appellants,

v.

The SALVATION ARMY, Defendant-Appellee.

Supreme Court of Tennessee, at Nashville.

March 24, 1986.

Bob Lynch, Jr., Jane Ann Whitson, Nashville, for the Cowdens.

Michael Galligan, McMinnville, for the Smallmans.

William W. Berry, Jay S. Bowen, Nashville, Robert W. Boyd, McMinnville, for Warren County.

Charles C. Trabue, III, Nashville, for Commerce Union Bank.

Richard M. Riebeling, Nashville, for The Salvation Army.

## OPINION

DROWOTA, Justice.

This action was instituted to obtain the construction of a testamentary trust created by the Will and Codicil of William H. Magness, deceased. Permission to appeal was granted by this Court solely on the

issue of the application of the Rule against Perpetuities in this case. The Appellants, Defendants and Cross-Claim Plaintiffs below, are the heirs of William H. Magness. The Appellees are Warren County, Tennessee, a Defendant and trust beneficiary, and the trustees, who were the Plaintiffs below. The Salvation Army, as the beneficiary of a trust created by the residuary clause, is also an Appellee. No dispute exists as to the facts of the case.

The Will was executed by Mr. Magness on April 11, 1928, with the Codicil subsequently executed on December 18, 1934. The Will and Codicil of William H. Magness were probated on February 21, 1936. This Will provides, in pertinent part, that:

> I give and bequeath the sum of fifty thousand dollars ($50,000) to be used in establishing and maintaining a home for the aged and indigent people of Warren County, Tennessee, to be known as the Elizabeth J. Magness Home for the Aged and Indigent, as a memorial to my mother, of this sum twenty thousand dollars, or so much thereof as may be necessary, shall be used, as determined by the Warren County Court, for acquiring lands and constructing and equipping buildings, the title to be taken in the County of Warren. The balance of said fund shall be taken, held and administered as a permanent trust fund by the Commerce-Union Bank of Nashville, Tennessee, and its successors in trust, the income therefrom to be paid over to the Trustee of Warren County to be expended upon order of Commissioners appointed by the Quarterly County Court of Warren County upon nominations made by the Board of Directors, or Trustees, of the W.H. and Edgar Magness Community House and Library, for the maintenance of inmates of said institution: My object is that this institution shall take the place of the present Poor House of Warren County and that the persons maintained therein shall have greater comfort and enjoyment of living in their

declining years; and I hope and desire that the County Court may make sufficient supplemental appropriations that this purpose shall be well accomplished. This gift is made upon condition that it shall be accepted, upon all the aforesaid terms and conditions, by the Quarterly County Court of Warren County, by resolution adopted at a regular session; and if it is not so accepted, upon all its terms and conditions, then and in that event none of it shall take effect and the said sum of fifty thousand dollars shall become a part of the residue of my estate, to be disposed of as hereinafter provided.

> All the rest and residue of my estate I give and bequeath to the Commerce-Union Bank of Nashville, Tennessee, and its successors, in trust, to be safely invested and maintained as an endowment fund, the income therefrom to be paid over semi-annually to the treasurer of the Salvation Army of Nashville, Tennessee, to be used in carrying on the work of the Salvation Army in Nashville and surrounding towns and communities.

> Should any one of the charitable or religious institutions named as beneficiary in this will cease to exist or to carry on its work, the sum herein given to it or set aside for its benefit shall revert to my estate and go to my heirs, and the trust pertaining to it shall cease.

By a formal resolution on April 6, 1936, the Quarterly Court of Warren County (the County) accepted the bequest on the terms and conditions stated in the Will. After purchasing land and constructing facilities, during the years from 1936 to May 28, 1982, the County operated the Elizabeth J. Magness Home for the Aged and Indigent (the Home), using both its own funds and the income paid from the trust. As permitted by the Will, twenty-thousand dollars of the bequest was spent on the erection and equipping of the Home; the remaining thirty-thousand dollars was held by the trustees and was administered according to the terms and conditions of the trust. The

County expended the funds it received from the trust in the maintenance and operation of the Home.

When the Home ceased operations in 1982, the trustees sought a construction of the Will and Codicil in the Chancery Court for Davidson County, Tennessee, filing the complaint on May 12, 1983. Both the County and the heirs of William H. Magness were joined as defendants. The Chancellor ordered that the Salvation Army, the beneficiary of the residuary trust, also be made a party defendant. The Magness heirs filed a cross-claim against the County on issues not now before this Court. On January 9, 1984, the County sought summary judgment against the Magness heirs, arguing that the reversionary interest of the heirs violated the Rule against Perpetuities and thus the trust res would pass in trust under the residuary clause for the benefit of the Salvation Army. The Cowden branch of the Magness heirs filed a cross motion for summary judgment on May 24, 1984. On June 1, 1984, the Salvation Army filed its motion for summary judgment, adopting the position of the County. Subsequently, on August 15, 1984, the Chancery Court held that the interest of the Magness heirs was void under the Rule against Perpetuities and thus the trust corpus passed under the residuary clause in trust for the benefit of the Salvation Army, granting the County's motion for summary judgment. Upon the Cowdens' motion to alter or amend the judgment, the Chancellor reaffirmed his holding that the interest of the Magness heirs was barred by the Rule against Perpetuities. The Magness heirs appealed to the Court of Appeals for the Middle Section, which affirmed the trial court's judgment. An application pursuant to Rule 11, T.R.A.P., was timely filed and this Court granted permission to appeal.

## I

We note from the beginning that this Will and Codicil demonstrate that the testa-

tor carefully planned the disposition of his substantial estate. Seven separate testamentary trusts for the benefit of individuals as well as of various educational, charitable, and religious institutions were created by the instrument. The testator specifically provided for legacies to his family (two of which were to be held in trust with remainders over), to other relatives, and to a number of friends. He made a bequest to a church on the condition that the church change its name as a memorial to his father. A scholarship fund, to be known as the "Magness Scholarship Fund," was also left to the Cumberland Mountain School in Crossville. By the Codicil, Mr. Magness created a contingent remainder in a life estate in a trust fund for the benefit of a servant and instructed the executors of his estate to purchase and convey a home in fee simple to this servant as well. The testator also provided that "[u]pon the death of [this servant] the trust fund shall revert to my estate," preserving a reverter upon the death of the beneficiary. Lapses of the legacies flowed into the residuary clause. The Codicil also revoked a specific legacy, which then became part of the residue of the estate. Throughout the Will and Codicil, the testator revealed that he fully understood and distinguished such concepts as reversionary interests, remainders, conditional bequests, lapse, and residuary disposition to develop a sophisticated scheme for the distribution of his property. After all legacies, expenses, and taxes, the residue of his estate and any lapses of specific legacies passed through the residuary clause into a trust for the benefit of the Salvation Army.

■ While the bulk of this Will and Codicil is not at issue here, we have remarked on this broad and comprehensive testamentary scheme because of the light it sheds on the testator's intent. Particularly in such a case as this, in which the testator has conceived in detail the disposition of his estate, but also more fundamentally on the general rule regarding the

construction of wills, we construe the instrument as a whole to ascertain and give as complete effect to this intent as is possible. "That intention is to be ascertained from the particular words used, from the context and from the general scope and purpose of the instrument." *Bell v. Shannon,* 212 Tenn. 28, 367 S.W.2d 761 (1963). *"Third National Bank v. First American National Bank,* 596 S.W.2d 824, 828 (Tenn. 1980). Therefore, before we determine the application of the Rule against Perpetuities to the interests created, we will restate the bequests and then classify the estates created. *Cf. Harris v. Bittikofer,* 541 S.W.2d 372, 374 (Tenn.1976); *Eager v. McCoy,* 143 Tenn. 693, 701, 228 S.W. 709, 711 (1920) (Restatements of the devises to demarcate the legal classification of the estates).

1. The bequest of thirty-thousand dollars in trust to the county is subject to dual conditions:

(a) as a condition precedent, that the County accept by formal resolution of the Quarterly Court the terms and conditions imposed by the bequest, and

(b) as a continuing condition that the trust would endure only so long as the income from the trust was used for the operation and maintenance of the Home on the terms and conditions accepted by the County.

2. The Salvation Army, as residuary legatee, would take the entire fifty-thousand dollars as a pour over into the separate trust created by the residuary clause for its benefit also subject to two conditions:

(a) Upon a condition precedent that the County refuse to accept the terms and conditions of the trust for the Home, and

(b) as a continuing condition that the residuary trust would endure so long as the income was used for its work in Nashville and the surrounding towns and communities.

3. Under the reverter clause, the testator specifically reserved to his estate and heirs the corpus of each charitable trust should the income from any of these several trusts cease to be used for the stated purposes and on the terms and conditions imposed.

In classifying the legal interests of these legatees, we observe that the testator by this bequest to the County has created only one trust. The residuary clause creates a separate and distinct trust for the benefit of the Salvation Army, into which this fund would have otherwise poured, along with the residue of the estate, if the County had not accepted the terms and conditions of the specific bequest for the Home. Accordingly, the following legal interests were created by these provisions of this Will and Codicil:

1. Warren County had a contingent remainder in a fee determinable.

2. The Salvation Army had an alternative contingent remainder in a fee determinable.

3. The estate and heirs retained a possibility of reverter upon the termination of the fee determinable, which would end when the trust income was no longer serving the purposes for which the trust was created.

Seen in this manner, the contingent remainder in the County vested as a fee determinable upon the formal resolution accepting the terms and conditions of the trust created for the Home; it could vest *only if* the County accepted these terms and conditions. Upon vesting in the County, the alternative contingent remainder in the Salvation Army was completely destroyed since it would vest *only if* the County had refused to accept the terms and conditions of the bequest, or in the testator's own words, "if [the trust] is not so accepted ... *then and in that event* none of it shall take effect and the ... sum ... shall become a part of the residue of my estate, to be disposed of as hereinafter provided." (emphasis added) By creating distinct trusts for the benefit of each of

these legatees, by imposing separate conditions on the continuance of these trusts, by imposing conditions precedent to the vesting of the trust in either legatee, and by independently and expressly reserving a reversionary interest for the estate, the testator clearly intended that once vested in a legatee, the trust corpus would flow through the reverter clause and not the residuary clause upon the determination of the fee.

Whether taken by the County or by the Salvation Army, either legatee could obtain only a fee determinable in their trusts subject to a possibility of reverter in the testator's estate and heirs. Once the trust was accepted by the County, nothing was left to pour into the residuary clause; thus, the trust pertained only to the County and could never again become part of the residue of the estate. In this regard, we note that the precise words of the reverter clause state that "[s]hould any *one* of the charitable or religious institutions named as beneficiary in this will cease to exist or to carry on *its* work, the sum herein given *to it* or set aside *for its* benefit shall revert to my estate and go to my heirs, and *the trust pertaining to it shall cease.*" (emphasis added) Once the County ceased to operate the Home, the trust pertaining to it ceased and the corpus reverted to the estate and passed to the heirs. We now turn to an explanation of these conclusions and then determine the application of the Rule against Perpetuities.

## II

■ In the courts below, the various interests of these parties were not defined fully by the parties or the courts, although the Court of Appeals did find that the Will created a fee subject to a conditional limitation rather than a fee determinable. The Court of Appeals placed emphasis on the testator's failure to use certain words such as "so long as," "until," or other words of this nature. The words used are certainly controlling, as they manifest the testator's intention, but no talismanic or magic words will be required, and "the intention of the testator, to be gleaned from the entire instrument and attendant circumstances, [is] the overriding consideration...." *Harris v. Bittikofer, supra,* 541 S.W.2d at 384. Moreover, "the intent of a testator rules the construction of a will, and is stronger than the technical terms employed." *Jourolmon v. Massengill,* 86 Tenn. 81, 93, 5 S.W. 719, 722 (1887) (citations omitted). *See also Nolfe v. Byrne,* 142 Tenn. 309, 317, 219 S.W. 1, 3 (1919). This intent will be given effect unless contrary to law. *Sands v. Fly,* 200 Tenn. 414, 421, 292 S.W.2d 706, 710 (1956).

### A. Words of Limitation

■ The first inquiry that must be made of the testator's intention is whether the word "heirs" as used in this Will and Codicil is a word of purchase or of limitation. This determination will resolve the problem of whether the testator intended his heirs to take as grantees of a contingent estate or whether he reserved to his estate and thus his heirs a reversionary interest. A person who takes by purchase is one designated to take as a grantee to whom the transfer is made, but one who takes by limitation acquires an interest not as a grantee but because the duration or quantum of the estate transferred has been limited by the grantor.

> "Broadly speaking, title ... may be acquired either by descent or by purchase. Title by descent is based on inheritance as an heir, or on escheat. Every other acquisition is by purchase, whether it be by gift, conveyance or devise. Words of limitation mark or define the quantum of the estate; whereas, words of purchase are related to the grantee."

*Harris v. Bittikofer, supra,* at 381. "In making this decision we are not unaware the words [sic] 'heirs' used in a conveyance is a technical word and construed as one of limitation unless, by the terms of the entire instrument, it is apparent the grantors in-

tended its use otherwise. *Kay v. Conner,* 27 Tenn. 624 (1848)." *Standard Knitting Mills, Inc. v. Allen,* 221 Tenn. 90, 96, 424 S.W.2d 796, 799 (1967). We do not ask what the word in isolation means, but rather we ask how it is used in the instrument and in the accomplishment of the testator's entire scheme of disposition.

> "When ... it is declared that the words [sic] heirs are words of limitation of the estate, it is meant of course that those words point out the line of succession in which the estate is to go, and when it is said they are not words of purchase, it results that they are words of descent, as descent and purchase are the only two modes of acquiring [property]."

*Harris v. Bittikofer, supra,* at 381.

In this case, considering the extent to which this testator has provided for the exacting distribution of his estate, we hold that the word "heirs" is used as a word of limitation. The reverter clause is phrased wholly in terms of the duration of the several trusts involved and does not create any contingent interest in a third party grantee; rather, the testator clearly intended that when the purposes of a trust are not served, then the trust ceases and the fund devolves upon his heirs, having expressly reserved a reversionary interest specifically for this purpose.

> " '[W]hen a limitation is in favor of the 'heirs' of a designated person, or is in words of similar import, then, unless a contrary intent of the testator is found from additional language or circumstances, the persons so described by the limitation as conveyees or devisees are those who ... would succeed to property [by descent].' "

*Fehringer v. Fehringer,* 222 Tenn. 585, 589–590, 439 S.W.2d 258, 261 (1969).

### B. Fee Determinable

■ Having made this determination that "heirs" is used in this Will as a word

of limitation, we have thereby also arrived at the premise for determining "whether the estate attempted to be created ... was an estate upon condition or an estate upon conditional limitation." *Yarbrough v. Yarbrough,* 151 Tenn. 221, 229, 269 S.W. 36, 38 (1925). If the testator had intended this property to go to a third party upon the termination of the prior estate, "[t]he limitation over in favor of the third person [would have destroyed] the idea that it was the intention of the grantor to create simply a determinable fee in these trustees," *id.,* and thus a fee subject to a conditional limitation would have been created. This latter estate is the one that the Court of Appeals found that this Will and Codicil created, relying on *Standard Knitting Mills, Inc. v. Allen, supra,* and emphasizing that the testator failed to reserve a vested reversion.

While the language of the deed in *Standard Knitting Mills* is in some aspects similar to the language employed in this Will, we believe that the testator clearly intended and effectively reserved a reversionary interest in the property involved in this case. *Standard Knitting Mills* is distinguished on two salient factors: most importantly, that in the deed the word "heirs" was found to be a word of purchase (rather than of limitation), creating an estate upon conditional limitation subject to an executory interest in the heirs as if they were grantees, and, that the will in the instant case makes the bequest of this fund clearly subject to a condition precedent as well as to a durational condition with a reversionary interest reserved in the testator's estate. The testator's intent is unmistakable in this case.[1] As will be shown below, the fact that the testator retained no interest classifiable as a vested reversion is immaterial to the conclusion of the Court in this case.

---

1. While we might have reached another conclusion regarding the interest created in *Standard Knitting Mills* than that Court, we do not find it necessary to overrule it now because the determinative conclusion of that Court was that "heirs" was used as a word of purchase rather than of limitation. How "heirs" is used is clear from the entire instrument and the scheme of disposition in the present case. The *Standard Knitting Mills* Court itself recognized that "heirs" is generally a word of limitation. 221

The validity of the interest created in the heirs by this Will and Codicil depends upon whether the trustees obtained a fee subject to a conditional limitation or a determinable fee. In *Atkins v. Gillespie*, 156 Tenn. 137, 299 S.W. 776 (1927), in which the Court distinguished the possibility of reverter from a reversion, a related problem arose, although that case involved the problem of whether the language used created a right of entry or a possibility of reverter in the heirs:

> "The estate created in the trustees ... is either in fee simple upon a condition subsequent or is a determinable fee. If the first, the estate of the trustees would not cease or terminate upon the breaking of the condition until a subsequent entry by the heirs at law of [the grantor]. If the estate created be a determinable fee, the title of the trustees would terminate upon the breaking of the condition, without the necessity of an entry by the heirs at law. *Yarbrough v. Yarbrough*, 151 Tenn. 221, 269 S.W. 36."

156 Tenn. at 140, 299 S.W. at 777.

Since the testator clearly limited the duration of the trust on the continued use of the income for the stated purposes of the bequest, the estate ends automatically upon the cessation of the use of the income and does not depend upon any positive act by the heirs to terminate the estate. "A limitation marks the period which determines the estate, without any act on the part of him who has the next expectant interest." *Yarbrough v. Yarbrough*, *supra*, 151 Tenn. at 230, 269 S.W.2d at 38. Furthermore, the testator did not create any interest in a third party upon the termination of the trust; rather, "[in] conveying such an estate there remains in the grantor ... the possibility of reverter." 151 Tenn. at 229, 269 S.W.2d at 38. Unlike the deed in *Yarbrough*, however, this testator, hav-

ing never attempted a limitation over to a third party grantee, therefore created a fee determinable.[2] As stated in *Mountain City Missionary Baptist Church v. Wagner*, 193 Tenn. 625, 628–629, 249 S.W.2d 875, 876 (1952):

> "Such 'determinable fee' while it continues, has all the incidents of a fee simple estate, except in so far as these incidents are expressly restricted by the limitation over. ... In such an estate there is a 'possibility of reverter' under which the land will revert to the grantor or his heirs upon the expiration of the estate of his grantee."

The use of the word "heirs" as a word of limitation preserved the possibility of reverter for the heirs of the testator. *Cf. Standard Knitting Mills, Inc. v. Allen*, *supra*, 221 Tenn. at 95, 424 S.W.2d at 798 (The grantors in the deed there conveyed their entire estate without including any words of limitation.). Or as the Court noted in *Yarbrough*, a fee determinable

> "is an estate whose continuance as a fee simple is made to depend upon the happening or not happening of some future event, but where the terms used in its creation are words of limitation, as distinguished from words of condition."

151 Tenn. at 227–228, 269 S.W. at 37–38 (quoting *Brewster* on Conveyancing, § 173).

### C. Contingencies and the Possibility of Reverter

█ In reaching the conclusion that the trustees took a fee determinable, we have not only considered the testator's expressions of the separate bequests to the County and to the Salvation Army, that is, after creating separate trusts for the benefit of these legatees, the testator expressly stated that each trust created for the "charitable or religious institutions" would endure

Tenn. at 96, 424 S.W.2d at 799. *See also Harris v. Bittikofer*, 541 S.W.2d 372, 381 (Tenn.1976).

2. We note again that either the County or the Salvation Army could take only a fee determinable in their respective and separate interests under the Will's reverter clause.

so long as the income from them was used for the purposes of each institution. Additionally, we have considered that, in the case of each of the bequests at issue here, both were subject to conditions precedent. The existence of these conditions precedent led us to the conclusion that each legatee had an alternative contingent remainder.

"[Regarding] the distinction between a contingent and vested remainder, the former is only a possibility or prospect of an estate, which exists when what would otherwise be a vested remainder is subject to a condition precedent, or is created in favor of an uncertain person or persons. Tiffany on Real Property, Third Edition, Vol. 2, Section 320. The same author says: 'A contingent remainder becomes a vested remainder so soon as the condition precedent is satisfied, or the person or persons to take ascertained, the particular estate still existing.' "

*Sands v. Fly*, 200 Tenn. 414, 422, 292 S.W.2d 706, 710 (1956). *See also First National Bank of Springfield v. Pointer*, 174 Tenn. 472, 480, 126 S.W.2d 335, 338 (1939) ("The limitations created alternative contingent remainders, or contingent remainders with a double aspect.").

If the condition precedent to the vesting of the County's interest had not been met, then the interest of the Salvation Army would have vested through the residuary clause, but once the condition was met and the County took the bequest under the terms and conditions it imposed, the remainder vested in the County as a fee determinable and could not flow through the residuary clause because the will had specifically and completely disposed of it and the condition precedent to vesting in the Salvation Army did not occur:

" 'If the prior fee be contingent, a remainder may be created to vest, in the event of the first estate never taking effect, though it would not be good as a remainder, if it was to succeed instead of being collateral to the contingent fee. . . .

It is not a fee mounted upon a fee, but it is a contingent remainder with a double aspect or on a double contingency.' "

*First National Bank of Springfield v. Pointer, supra*, 174 Tenn. at 480, 126 S.W.2d at 338 (citation omitted). The Salvation Army's interest as an alternative contingent remainder was destroyed when the interest vested in the County. "As the ultimate bequest . . . is expressly made subject to a condition precedent, it is a contingent interest." 174 Tenn. at 479, 126 S.W.2d at 337. *See also Jackson v. Jackson*, 219 Tenn. 237, 242, 409 S.W.2d 172, 175 (1966).

Arguably, if the testator had not provided expressly for a reverter, then upon the termination of the trust for the County, it would have passed via the residuary clause, but the

"exception of certain [property] from a residuary devise for the purpose of giving it to another devisee would not prevent the excepted [property] from going to the residuary devisee, if the specific devise to the other person failed or lapsed or was void; that such a result would only be reached where there was a *discernable intention to take the excepted property from the residuary devisee.*"

*Fehringer v. Fehringer, supra*, 222 Tenn. at 595, 439 S.W.2d at 262 (emphasis added). By preserving a reverter, Mr. Magness clearly intended that once vested in the County, the trust funds would never again become part of the residue of the estate.

When the conditions precedent are considered together with the limitation on the duration of the estate, the express reservation of the reverter becomes manifestly integral to the testator's entire testamentary plan. Nevertheless, if the testator had not specifically reserved his reversionary interest in a separate reverter clause, he would have retained it in any case because both legatees took an estate of possibly limited duration, that is, a fee determin-

able.[3] "The rule in this State is that no particular or technical words are necessary to constitute a condition either precedent or subsequent. It is not necessary that the right of re-entry be reserved, or that a forfeiture be provided in express terms." *Nolfe v. Byrne, supra,* 142 Tenn. at 317, 219 S.W. at 3 (citations omitted). Certainly, if such conditions are express and lawful, they must be enforced. *Id. Cf. Fehringer v. Fehringer, supra,* 222 Tenn. at 594, 439 S.W.2d at 262 (where a reversion is specifically preserved, it will pass as intended).

As stated in Simes and Smith, Law of Future Interests (Second Edition 1956), § 281, at p. 327, the possibility of reverter "may be defined as the undisposed ... interest remaining in the grantor, or in the heirs of the devisor, when the owner of ... [a] fee simple absolute has conveyed or devised it in determinable fee...." Some authorities think that the possibility of reverter, being only a contingency by nature, cannot vest until the fee determinable is terminated, but because this interest is reserved in the grantor or his heirs, however, it is not the kind of contingency that affects its validity generally. *See* Simes, Future Interests (Second Edition 1966), §§ 13 and 132.

### III

■ The last and determinative consideration in this case is whether the possibility of reverter is subject to the Rule against Perpetuities in Tennessee. The Court of Appeals relied on *Standard Knitting Mills, Inc. v. Allen, supra,* in reaching its conclusion that, although the intent of the testator would be defeated, the application of the Rule could not be avoided because the testator had created "a fee simple with conditional limitation wherein the grantor reserves no vested interest [and did not create] a conditional fee in which a vested

reverter is reserved." As shown above, we have concluded from a reading of the entire instrument that the testator created a fee determinable in this case and not a fee simple with a conditional limitation. "We must look to the language of the will to determine the intention of the testator as to whether or not a condition contrary to the rule against perpetuities was created." *Sands v. Fly, supra,* 200 Tenn. at 423, 292 S.W.2d at 711. In our opinion, *Standard Knitting Mills, Inc. v. Allen* has been misapplied to the language of this Will and Codicil; that case depends on its finding that the word "heirs" was used as a word of purchase. Further, the testator's intent in this case is expressed in the most exacting terms.

The Rule against Perpetuities is stated in *Davis v. Williams,* 85 Tenn. 646, 649, 4 S.W. 8, 9 (1887):

"A devise by which property is tied up and made inalienable beyond the period within a life or lives in being and twenty-one years, with a fraction of a year added for the term of gestation in cases of posthumous birth, is void as creating a perpetuity."

The Rule requires that " '[t]o constitute a valid [interest], the contingency upon which it is to take effect must occur [vest] within a life or lives in being and twenty-one years and a fraction of a year afterwards.' " *Brown v. Brown,* 86 Tenn. 277, 292, 6 S.W. 869, 874 (1888) (citations omitted). As a positive rule of property law, it applies to all future interests, whether created by will, deed, or otherwise. *Crockett v. Scott,* 199 Tenn. 90, 284 S.W.2d 289 (1955); *Davis v. Williams, supra.* Nevertheless, the application of the Rule depends upon the interests the testator or grantor intended to create and this intention governs the construction of the instrument. In this case, the instrument is a will and

"for the purposes of this construction, the will must be looked to as matters

---

**3.** Thus, should the Salvation Army cease to operate "in Nashville and surrounding towns and communities," the residuary trust would also terminate and the corpus pass as a possibility of reverter to the heirs under the reverter clause.

stood at the death of the testator, when it went into effect, and that subsequent events cannot be noticed in aid of the construction, and that if, on a fair construction of the will, as matters then stood, it is open to the legal possibility of producing a result violative of the settled policy of the law, it must be declared void."

*Brown v. Brown, supra,* 86 Tenn. at 291, 6 S.W. at 873. The Rule against perpetuities is a creature of the common law and thus we must look to the common law to guide us in its application. *Eager v. McCoy, supra.*

While the Court of Appeals correctly concluded that "[t]he rule against perpetuities is not a rule of construction but of law, and is to be applied even if the accomplishment of the express intent of the testator is thereby made impossible," *Crockett v. Scott, supra,* 199 Tenn. at 95, 284 S.W.2d at 291, " '[t]he remoteness against which the rule is directed is remoteness in the commencement or first taking effect of limitations, and not in the cesser or determination of them. An estate that is to arise within the prescribed period may be so limited as to be determined on the happening of any event, however remote.' Lewis on Perpetuities, page 144." *Eager v. McCoy, supra,* 143 Tenn. at 703, 228 S.W. at 712.

"The question is whether the testator intend that a compliance with the requisition, which he has chosen to annex to the enjoyment of his bounty, shall be a condition to its acquisition, or merely of its retention."

*Cannon v. Apperson,* 82 Tenn. 553, 566 (1885) (citations omitted).

In *Yarbrough v. Yarbrough, supra,* Justice Green recognized that, at common law, "[w]hen a determinable fee ends, the estate reverts to the grantor and his heirs. In conveying such an estate there remains in the grantor the reversion, or rather the possibility of a reverter," 151 Tenn. at 228–229, 269 S.W. at 38, and "[s]uch an interest

or right in the grantor, as it does not arise and take effect upon a future or remote contingency, is not liable to the objection of violating the rule against perpetuities in the same degree with other conditional and contingent interests ... of an executory character." *Id.,* 151 Tenn. at 232, 269 S.W. at 39 (citations omitted). Whether considered a vested interest or not, the possibility of reverter was reserved by the testator in his Will and Codicil from the time the Will and Codicil spoke and has never been released by the heirs. The heirs did not acquire the estate upon the breach of a condition, but rather they always retained a reversionary interest by descent because the duration of the fee was limited by the testator.

"The law ... permits determinable fees which may terminate either on the occurrence or nonoccurrence of an event which event may be one which is not certain to occur. Under such circumstances the possibility of reverter is essential to the existence of such a fee. When a determinable fee is valid as it is in this State the possibility of reverter is also valid and not subject to the rule against perpetuities."

*Mountain City Missionary Baptist Church v. Wagner, supra,* 193 Tenn. at 629, 249 S.W.2d at 876–877. The possibility of reverter does not violate the policy of the Rule, as stated in *Jourolman v. Massengill, supra,* quoting Lord Coke, " 'that he that hath no possibility to have the land revert to him should restrain his feofee in fee simple of all his power to alien....' " 86 Tenn. at 100–101, 5 S.W. at 725.

So long as a positive rule of law is not violated, the testator or grantor may impose any conditions he chooses upon the transfer of his property. *See, e.g., Jourolman v. Massengill, supra.* "As a general proposition, future interests reserved to or remaining in the grantor or in the estate of the testator are not subject to the rule [against perpetuities]." Simes, Future Interests (Second Edition 1966), § 132, p. 280.

*See also* Bogert, Trusts and Trustees (Revised Second Edition 1977), § 347, p. 678.

Accordingly, we reverse the judgment of the Court of Appeals and hold that the possibility of reverter is not subject to the Rule against Perpetuities in Tennessee. The trust fund passes as a reverter in fee simple absolute to the heirs of William H. Magness. The costs are taxed equally among the parties. The case is remanded for entry of an order consistent with this opinion.

FONES and HARBISON, JJ., and CORNELIUS, Special Justice, concur.